Olen H. VEST, Respondent,

v.

CITY NATIONAL BANK AND TRUST COMPANY, Executor of the Estate of Herbert A. Hamel, Deceased, and Otis E. James, Appellants.

No. 55498.

Supreme Court of Missouri,
Division No. 1.

Sept. 13, 1971.

E. J. Murphy, Butler, for respondent.

William H. Sanders, David C. Trowbridge, K. D. Travis, Kansas City, for appellants; Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel.

HIGGINS, Commissioner.

Action for damages for personal injuries in which plaintiff had verdict and judgment for $30,000.

Although other grounds of recovery were pleaded, plaintiff submitted his action on the disjunctive theories of negligence that defendant doctors either failed to reposition and fasten the separated bones of plaintiff's left shoulder, or abandoned plaintiff as their patient.

On February 15, 1965, while working as a carpenter, plaintiff, age 55, fell 25 feet from a roof to the ground. He was taken by ambulance to the emergency room of Baptist Memorial Hospital where Dr. Hamel, of Drs. Hamel and James, orthopedic specialists, was on duty. Examination revealed that plaintiff had suffered a separation of his clavicle (collarbone) at its joint with his scapula (shoulder blade). He also had sustained a sprained back, a sprained hip, a sprained foot, and some teeth fractures. He also sustained five rib fractures and fluid eventually built up in his chest cavity as a reaction to the rib fractures.

Dr. Hamel secured Dr. A. G. Ramos, a chest surgeon, to care for plaintiff's chest injuries. Dr. Ramos determined that the shoulder repair should be delayed eight or ten days to guard against pulmonary and cardiac complications. Nine days after the accident, Dr. Ramos gave the orthopedists the "green light" for the shoulder repair.

According to Dr. James, the proper surgical procedure for repair of plaintiff's shoulder was a removal of the distal (outer) end of the clavicle. The operation was accomplished on February 25, 1965, and plaintiff was discharged Saturday, February 27, 1965.

Plaintiff complained that during his hospitalization the only care he received was pain pills. Other testimony and records show he received X rays, blood analysis, electrocardiogram, urinalysis, blood pressure and pulse checks, and intensive care.

Plaintiff was to return to the hospital in 10 days for removal of sutures; however, upon return home he experienced chest pain and breathing discomfort. Mrs. Vest called but did not reach Dr. Ramos Saturday night. She then called Dr. James at his home and he prescribed pain pills. Subsequent calls were disputed, but plaintiff claimed that he and members of his family tried to reach Drs. Hamel and James through their answering service and offices on Sunday, Monday, and Tuesday without success. On Wednesday, with the help of a lawyer, plaintiff secured Dr. Sam Hoeper, a general practitioner, who saw plaintiff on Saturday, March 5, 1965, and admitted him to Research Hospital.

Dr. Hoeper found plaintiff clinging to a chair, having difficulty breathing. He noted the rib fractures and back and hip injuries, and diagnosed a "pneumonic consolidation-like" area in his lower left chest. Harry D. Bartlett, D.D.S., was secured and he removed plaintiff's upper teeth. Dr. Hoeper also secured Dr. Benoit, a chest surgeon, who found pleural fluid in plaintiff's chest as a result of the accident on February 15, 1965. While at Research, plaintiff was also seen by Dr. Harry D. Overesch, an orthopedic specialist.

Dr. E. L. Rhoades of Warsaw, Missouri, testified on behalf of plaintiff. According to him, plaintiff's shoulder separation was a common injury, particularly to football players; that when such injury was repaired in the manner of Drs. Hamel and

James, the patient suffered a loss of support which produced a shoulder droop; that plaintiff had a shoulder droop as a result of his operation. In the opinion of Dr. Rhoades, plaintiff should first have been accorded conservative treatment consisting of binding the collarbone and elevating the shoulder and, if such treatment was not a success, then an internal fixation by wire would be proper. He felt the amputation of the distal end of the clavicle, performed by defendants, was not the proper treatment of plaintiff's injury.

The foregoing matters of proper medical care and abandonment were disputed, in addition to the testimony of Dr. James and Dr. Ramos, by Dr. Overesch and Dr. Benoit.

Dr. Overesch agreed with the treatment of plaintiff's shoulder as accomplished by Drs. Hamel and James because it would afford less trauma, give more motion, and avoid future arthritis. According to him, the fixation method advocated by Dr. Rhoades would have required a plaster cast which would not be proper in view of plaintiff's chest condition. He felt that with an injury such as sustained by plaintiff, some shoulder disability was inevitable.

Dr. Benoit was of the opinion that plaintiff's chest fluid accumulation was minimal and that his second hospitalization was not justified. According to him, injuries such as those plaintiff sustained in his fall would cause discomfort for three or four weeks.

Dr. Herbert Virden, an X-ray specialist, made pictures of plaintiff at Research and also viewed pictures of plaintiff made at Baptist Memorial. He felt that plaintiff had not suffered from pneumonia and that any fluid present at either hospitalization was a result of the accident and injuries of February 15, 1965.

Plaintiff testified to loss of work in his trade of carpenter, pain and suffering from his injuries, and addiction to narcot-

ics. The case was tried in November, 1969, and plaintiff was in an accident in 1967 where he injured his left hip and back.

The dispositive question on this appeal is the manner by which the case was submitted. Appellants contend that the court erred in giving Instruction No. 6 on damages because it did not limit plaintiff to a recovery of damages he may have sustained as a direct result of any negligence of defendants but, instead, gave the jury a roving commission to award damages for any occurrence mentioned in evidence irrespective of whether defendants were liable for any such occurrences.

Plaintiff submitted his theories of recovery by Instruction No. 4:

"Your verdict must be for the plaintiff if you believe:

"First, defendants either: failed to reposition and fasten the separated bones of plaintiff's left shoulder, or abandoned plaintiff as their patient, and

"Second, defendants' conduct in any one or more of the respects submitted in paragraph First, was negligent, and

"Third, as a direct result of such negligence plaintiff sustained damage."

The issue of plaintiff's damages was submitted by Instruction No. 6:

"If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the occurrence mentioned in the evidence."

■ Instruction No. 6 is MAI 4.01 and was, therefore, the appropriate instruction on the measure of damages. However, the Notes on Use following each MAI dictate the circumstances under which the instruction may be used and such notes must be followed. Peak v. W. T. Grant Co., Mo., 409 S.W.2d 58, 60[1]; Homm v. Oakes,

Mo.App., 453 S.W.2d 679. The Notes on Use to MAI 4.01, required to be followed, state: "The word 'occurrence' should be adequate except in cases where there is evidence that two different occurrences produced the injury with defendant being responsible for only one. In such cases counsel will need to substitute some descriptive term which will properly limit the jury to the occurrence produced by defendant." See Gant v. Scott, Mo.App., 419 S.W.2d 262, 266[4]; Miller v. American Ins. Co., Mo.App., 439 S.W.2d 238, 240[1-4]; Jurgeson v. Romine, Mo.App., 442 S.W.2d 176, 177-178[4, 5].

■ The defendant doctors could be held liable only for damages to plaintiff as a direct result of their malpractice, and could not be held responsible for damages resulting from other occurrences. See e.g., Belisle v. Wilson, Mo., 313 S.W.2d 11; Herr v. Ruprecht, Mo., 331 S.W.2d 642; Zimmerman v. Young, Mo.App., 280 S.W.2d 457; Sparks v. Ballenger, Mo., 373 S.W.2d 955. Note, particularly, O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55, where judgment was reversed because the instruction did not limit recovery to an injury to plaintiff's thumb caused by defendant, and the evidence showed plaintiff also to have a boil on his thumb; and McDonald v. Crider, Mo.App., 272 S.W. 980, where reversal was ordered because the instruction did not make it plain that defendant was not responsible for damages suffered by plaintiff due to her injury and which would have resulted to her in any event even though treated with proper skill and care.

■ The statement of evidence reveals a number of occurrences for which defendants could not be liable under plaintiff's theory of his case as submitted by Instruction No. 4, e.g.: The February 15, 1965, fall itself; failure to diagnose and treat the fractured teeth; failure to visit, treat and advise plaintiff while at Baptist Me-

morial; failure to secure consent to surgery; premature discharge; failure to treat conditions other than the shoulder; failure to diagnose and treat pneumonia; failure to respond to telephone calls; failure of Dr. Overesch to treat; the 1967 accident; dependence upon narcotics. In addition, the evidence shows that plaintiff's condition could have resulted from the fall as well as from any act or omission of defendants.

This demonstration of error in the measure of damages instruction has been recognized by the cases. In Jurgeson v. Romine, supra, the ultimate issue was whether defendant caused plaintiff's land to be flooded. MAI 4.01 was given on the measure of damages and the court noted that there was evidence from which the jury could have found that all the flooding was not caused by defendant's obstruction of a creek but that some of it would have occurred without defendant's act. Appellant's contention was that the word "occurrence" in the damage instruction was ambiguous. The court held that since the evidence showed two occurrences, the obstruction by defendant and natural flooding, for some of which defendant was liable and some not, the instruction, absent some limitation or description, was erroneous. 442 S.W.2d l.c. 178. In Homm v. Oakes, supra, plaintiff sought recovery against defendant for a rear-end collision. Plaintiff had been injured previously in an automobile accident and the evidence showed similar injuries in both accidents. The court found error in use of MAI 4.01 without modification limiting plaintiff's damages to those flowing from the occurrence where defendant struck plaintiff from the rear. 453 S.W.2d l.c. 681. In Miller v. American Ins. Co., supra, plaintiff's property was damaged when a cloudburst sent rain pouring into her house through the roof and through the siding. Defendants were contractors hired to repair hail damage to the roof and were responsible for damage occasioned by their failure to cover the roof

but were not responsible for that which blew through the previously damaged siding. The measure of plaintiff's damages was submitted by MAI 4.01 without modification and the court held the use of "occurrence" without modification, limitation, or description was erroneous because it allowed for damages to the house not only by rain coming through the roof but also for damage from rain blown through the previously damaged siding. 439 S.W.2d l. c. 240.

So it is in this case that the jury could have believed plaintiff to be entitled to recover for all his injuries, including those suffered in the fall which caused the shoulder injury originally. Similarly, with plaintiff's theories of recovery submitted disjunctively, the jury could have found plaintiff entitled to recover on only one of the two grounds and yet have awarded damages for any and all injuries received.

As stated by the authorities, Instruction No. 6 should have employed descriptive terms which would have limited recovery to an occurrence attributable to the defendants for which the jury could find defendants liable. Note by Chilton v. Ralls, 220 Mo.App. 355, 286 S.W. 718, how, prior to MAI, the court, by separate instruction, properly limited the jury to consideration of damages resulting from occurrences for which defendant was liable.

For this error in submission of damages, the case must be reversed; and since the questions of damages and liability are so interwoven as to render separate trial impractical, retrial should be on all issues. Jurgeson v. Romine, supra, 442 S.W.2d l. c. 178.

Judgment reversed and cause remanded.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.