**Albert Harvey CLARK,**
**Plaintiff-Respondent,**

v.

**Thomas P. McCLOSKEY, Jr.,**
**Defendant-Appellant.**

**No. 9792.**

Missouri Court of Appeals,
Springfield District.

Dec. 5, 1975.

C. H. Parsons, Jr., Dexter, L. Michael Lorch, Piedmont, for plaintiff-respondent.

Wendell W. Crow, Ford, Ford, Crow & Reynolds, Kennett, for defendant-appellant.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

TITUS, Judge.

Traffic at the intersection where the daylight accident in question occurred was controlled by 4-way stationary stop signs. Northbound plaintiff obeyed the stop sign intended for his observance before driving into the intersection. Eastbound defendant

did not heed the sign at the west edge of the intersection, thereby causing the front of his automobile to collide with the left rear wheel of plaintiff's "bob truck." Defendant admitted his negligence but has appealed, nevertheless, from the $10,000 judgment entered on the jury's verdict claiming certain errors to be discussed anon. Because of our disposition of this appeal, we need tend to only two of the six points raised by the defendant.

■ Defendant initially asseverates that the trial court erred in failing to sustain his motion for judgment n. o. v. (Rule 72, V.A. M.R.) because plaintiff was guilty of contributory negligence as a matter of law. Of course, the burden of proving plaintiff's contributory negligence rested on defendant. Since the jury could believe or disbelieve defendant's evidence on that issue, even though it stood uncontradicted, we ignore the evidence favorable to defendant, and observe that proof of plaintiff's negligence must come from evidence adduced by him or which he conceded to be true, or from proof by defendant which leaves no room for other reasonable inferences, or from a combination of them, to permit a court to properly conclude that plaintiff was contributorily negligent as a matter of law. *Davenport v. Wabash Railroad Company*, 435 S.W.2d 641, 643[2–4] (Mo. banc 1968). Therefore, we recast the evidence in light of that rule.

After plaintiff halted his truck at "the south edge of the intersection in obeyance to the stop sign, he looked to his right (east) and to his left (west) and saw "there wasn't nothing coming." Plaintiff opined he could see west down the intersecting east-west highway "probably . . . two or three hundred feet." While he agreed on cross-examination "[t]here is a possibility" he could have seen westward "for a distance of half a mile," plaintiff concluded "I looked down there far enough to see if there was anything coming, didn't see anything." Plaintiff, then looking ahead, proceeded northward into the intersection. When the front of plaintiff's truck was nearing the north edge of the intersection and traveling "between 5 and 10 miles an hour," plaintiff's attention was attracted to his left (west) by the sound of tires skidding on the pavement. It was then that plaintiff for the first time saw defendant's eastbound car "about 12 or 13 feet away" traveling at a speed unknown to plaintiff. The impact of the front of defendant's automobile with the left rear wheel of plaintiff's truck, knocked the truck around so it stopped "headed back west." The tires on defendant's car left skid marks of "somewhere between 45 and 50 feet," part of which were "in the proper right hand lane for eastbound traffic [but] right at impact" they veered to the left over the center line. As "admissions against interest," plaintiff read portions of defendant's deposition which included the following: "Q. About how fast were you going when this accident occurred . . .? A. . . . I would say 25 miles an hour. You mean at the time of the actual point of impact? Of course, I had been braking."

■ As expected, defendant champions the well-known rule that where a duty to look exists, plaintiff's failure to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law. This general rule, however, does not alone comport with all the considerations with which a court must contend in determining negligence as a matter of law vel non. What constitutes negligence in failing to keep a lookout in a particular direction at any certain place or time depends upon the then existing circumstances and conditions and is usually a jury question. *Hammon v. Gentemann*, 423 S.W.2d 5, 7[2] (Mo.App. 1967). Moreover, as said in *Albert H. Hoppe, Inc. v. St. Louis Public Service Co.*, 227 S.W.2d 499, 502[3, 4] (Mo.App.1950), affirmed on this point 235 S.W.2d 347, 348 (Mo.1951), ". . . 'In order for contributory negligence to legally bar the plaintiff's recovery, it is not sufficient that plaintiff was negligent and that such negligence contributed to the cause, or was a contributing

cause, of his injury—a contributing cause but for which the injury would not have been sustained. The negligence of plaintiff must have been a proximate cause, that is, a "proximate cause" as the term is used in expressing a cause which may be reasonably regarded as a direct, producing or efficient cause; or as entering into and forming a part of the direct, producing or efficient cause of the injury. . . .' This follows the earlier statement that 'The rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct, producing, and efficient cause of the casualty, and absent which the casualty would not have happened.'" See also *Meitz v. Garrison,* 413 F.2d 895, 898 (8th Cir. 1969), and cases there cited.

■ In pressing his claim as to plaintiff's negligence, defendant stresses his own testimony which we are admonished to ignore. Instead, in deciding the issue, we are obliged to take the view of the evidence most favorable to plaintiff. *Tribout v. Kroger Grocery & Baking Co.,* 191 S.W.2d 261, 263[1] (Mo.App.1945). From such a view we find that plaintiff could "probably" see some 200–300 feet westward, that he did "look down there far enough to see if anything was coming" and when he ascertained no traffic was approaching within his view, he directed his attention northward as he drove in that direction into the intersection. The jury had pictorial evidence of the intersection from which it could have determined that plaintiff's estimate of his sight distance was correct and that the "possibility" of seeing one-half mile to the west from plaintiff's stopped position was untenable; it also had the right to disbelieve defend-

ant's testimony to the effect that defendant's vehicle was within plaintiff's range of vision when he looked and to believe plaintiff's version to the contrary. But be all that as it may, the exact question is, "Was the quantum of the contributory negligence charged sufficient to prevent recovery?" We think not. Although plaintiff had a duty to keep a lookout, and albeit one cannot be held to the impossibility of looking laterally and ahead at the same time, it must be remembered that this was a 4-way stop intersection and had plaintiff seen the defendant's automobile approaching at the speed claimed by defendant, there would have been no reason for him to then anticipate that defendant would not stop in violation of the stop sign. Since any negligence of which plaintiff may have been guilty would also have to be a proximate cause or a producing cause of the casualty, it cannot be held that he was guilty of contributory negligence as a matter of law and under all the evidence it became a jury question.

■ Defendant's additional point which we shall discuss refers to the giving of plaintiff's damage instruction in the exact words of MAI 4.01.[1] It is claimed by defendant that since more than one occurrence was mentioned in the evidence, the word "occurrence" should have been modified to limit the jury's consideration to the single occurrence produced by defendant as directed in "Notes on Use" under MAI 4.01.[2]

The accident with which we are concerned occurred February 14, 1973. Plaintiff did not complain of injury at the accident scene, but, according to plaintiff, shortly after the collision he "started feeling bad" with pain in the "lower part of my back on the right hand side [which] kept

---

1. MAI 4.01—"If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the occurrence mentioned in the evidence."

2. Notes on Use—"The word 'occurrence' should be adequate except in cases where

there is evidence that two different occurrences produced the injury with defendant being responsible for only one. In such cases counsel will need to substitute some descriptive term which will properly limit the jury to the occurrence produced by defendant."

getting worse." Two days later on February 16, plaintiff consulted Dr. Northington who found "spastic, ropy type muscles in [plaintiff's] lumbar area" which he diagnosed as "acute muscle spasms." Dr. Northington treated plaintiff in the hospital until February 21 with pelvic traction, "pills and shots." When discharged from the hospital, plaintiff's "pain had lessened tremendously." Following discharge, plaintiff saw Dr. Northington five times to and including March 19. Plaintiff was examined by an orthopedic surgeon at Dr. Northington's request, and save for 5 or 6 chiropractic treatments plaintiff arranged for himself, plaintiff had not received any care or treatment for his injuries for one year before the case was tried on April 5, 1974. Plaintiff returned to his job as brick mason "full time" on April 2, 1973. On the day of trial, plaintiff said he still had "sharp pains" in his back "mostly at night" and that "my legs get numb . . . my legs go to sleep over it." Medical expenses incurred by plaintiff, including "around forty some dollars" he paid the chiropractor, were $381.25.

On cross-examination plaintiff acknowledged he had been previously injured in an accident on July 16, 1968, when a scaffold fell on him and that he had filed a workmen's compensation claim by reason thereof. Although plaintiff denied this accident had resulted in any low back injury or leg numbness, in his December 30, 1968, deposition taken in the compensation matter, he had testified to the following effect: The falling scaffold had struck plaintiff "in the back of the head . . . across the upper part of [the] back [and] down on his hip." When asked if most of his pain from the scaffold accident was "in your neck area," plaintiff answered, "A lot of it was but a lot of it was still down here in my back. . . . In the lower part of [my] back . . . that is what bothers me now really worse." He testified at the deposition that his back "hurts pretty bad . . . it is just numb back there [indicating around his belt line] and my legs at

nights get numb . . . just go to sleep and I have to rub them." From the accident in July 1968 until the time of the December 1968 deposition (about 6 months), defendant related that with the exception of two or three days, he had been physically unable to do any work or to engage in any kind of activity requiring physical exertion. The workmen's compensation claim was settled for $2,080 and in addition, the employer and insurer agreed to pay $1,262.73 for medical expenses incurred by the plaintiff.

Three doctors testified at the trial. In addition to Dr. Northington, plaintiff's treating physician, two examining doctors (one each for plaintiff and defendant) related the results of their examinations. Plaintiff's examining doctor opined plaintiff had chronic myositis of the lumbar paravertebral muscles, being somewhat worse on the right side; defendant's examining physician could not agree to the chronic myositis diagnosis although he found some tenseness in plaintiff's back muscles. All agreed plaintiff had a spondylosis of the 5th lumbar vertebra with a resulting spondylolisthesis. This condition, undoubtedly congenital in origin, was of long standing and gives back instability that is subject to pain.

One of the principal issues in the present case was whether plaintiff's disability resulted from the vehicular accident of February 14, 1973, for which defendant would be liable, or resulted from the scaffold accident of July 16, 1968, or from the congenital condition in his back for which defendant would not be liable. It seems clear from the foregoing statement of facts that the jury could believe that plaintiff's injuries and damages were produced, in whole or in part, by the two accidents and the congenital defect in plaintiff's back, or by any one alone, or by any two and not the other. The verdict, when viewed in conjunction with MAI 4.01, does not give us a clue as to what the jury actually believed and found. In such circumstances, it was required that MAI 4.01 be modified in response to its Notes on Use so as to limit the jury to a consideration of the results of the

accident which occurred February 14, 1973, the only occurrence for which defendant was liable in determining the amount of compensation. Failure to so modify was error prejudicial to defendant. *Russell v. Terminal Railroad Ass'n of St. Louis,* 501 S.W.2d 843, 847[2] (Mo. banc 1973); *Vest v. City National Bank and Trust Company,* 470 S.W.2d 518, 521–522[2, 3] (Mo.1971); *Homm v. Oakes,* 453 S.W.2d 679, 681–682 (Mo.App.1970); *Jurgeson v. Romine,* 442 S.W.2d 176, 177–178[4, 5] (Mo.App.1969); *Miller v. American Insurance Company,* 439 S.W.2d 238, 240[1] (Mo.App.1969). Plaintiff's arguments in defense of giving MAI 4.01 without modification are answered by the authorities just cited and need not be repeated here.

The other errors claimed by defendant in his points relied on hopefully will not be repeated upon retrial and so do not require attention at this time. For the reasons stated, the judgment nisi is reversed and the cause is remanded for a new trial on all issues except as to defendant's negligence which has been admitted by him.

STONE, J., concurs.

BILLINGS, C. J., concurs and files separate concurring opinion.

BILLINGS, Chief Judge (concurring):

In view of the rulings by our Supreme Court in the cases cited in the principal opinion on the issue of modification of MAI 4.01, my concurrence is compelled. However, I want to point out the dilemma facing the trial court in giving MAI 4.01 in a situation such as the present case.

The Notes on Use dictate a modification substituting some descriptive term for the word "occurrence" so as to limit the jury to a consideration of the specific occurrence for which the defendant was liable. But what descriptive term will pass muster on appellate review? Two of the three dissenting judges in *Russell v. Terminal Railroad Ass'n of St. Louis, supra,* would correct MAI 4.01 so as to require the date of

the event in question. Without some guidance from our Supreme Court a trial judge runs the risk of employing an unapproved descriptive term or an unauthorized modification of an approved instruction.

The dissent in *Russell* also points out that under existing law a party deeming an instruction too general has the obligation to offer a clarifying or limiting instruction in order to preserve error. In the absence of enforcement of this rule the trial court is placed in the unenviable position of being sandbagged by the inaction of the derelict party.