Irene Carter THWEATT and her husband, Landon Lee Thweatt, Plaintiffs-Respondents,

v.

Elmer Fred HAEFNER, Defendant-Appellant.

No. 9812.

Missouri Court of Appeals, Springfield District.

July 14, 1976.

Motion for Rehearing or to Transfer Denied July 30, 1976.

Application to Transfer Denied Sept. 13, 1976.

Michael Avedisian, Andrew H. Avedisian, Paducah, Ky., for plaintiffs-respondents.

Manuel Drumm, Sikeston, for defendant-appellant.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

PER CURIAM.

The two-lane highway on which the accident in question occurred, U. S. Highway 60 in Mississippi County, Missouri, was "extremely wet" at the time of the collision. Appellant concedes that as he was rounding a curve at "sixty, sixty-five" miles per hour, his eastbound car skidded across the center

line. Its left rear fin scraped the left side of respondents' westbound truck. Respondent Irene Thweatt (hereinafter respondent) testified appellant's car hooked the back bumper of the truck, forcing the truck down a thirty-five to forty foot embankment backwards. Appellant challenges the judgment entered on the $29,200 verdict awarded respondent. Our disposition of the appeal requires that we explore only one of the three points appellant raised.

Appellant contends that the trial court erred in giving respondent's damage instruction in the unaltered form of MAI 4.01 because respondent suffered injuries in several separate occurrences between the time of the accident with appellant and the time of trial two and a half years later. The argument is that the word "occurrence" in the instruction should have been modified per the "Notes on Use" accompanying MAI 4.01 thereby limiting the jury's consideration to respondent's injuries resulting from the September 3, 1971, collision caused by appellant.

Immediately after that collision, while still at the scene, respondent complained of neck and back pain. She was taken by ambulance to a hospital in Cairo, Illinois; later that same day she was transferred to Lourdes Hospital in Paducah, Kentucky. Her regular physician, Dr. David H. Leeper, diagnosed her condition as "acute neck sprain, low back sprain, muscle strain" and kept her hospitalized during the succeeding nine days.

Dr. Leeper testified that prior to September 3, 1971, respondent was in good physical condition for a woman fifty-eight years old. He treated her continuously from September 3, 1971, until May 5, 1974, although she consulted three other physicians during that interim also. Dr. Leeper had written "no permanent disability anticipated" in a September 24, 1971, report. However, on July 7, 1972, he advised respondent to quit her job as a nurse's aid "because of the difficulty [respondent] is having with her neck." On the date of trial, May 22, 1974, Dr. Leeper still felt respondent was not capable of gainful employment.

The first in the series of "occurrences" unrelated to the mishap with appellant transpired within a month's time of that September 3, 1971, event. On October 14, 1971, respondent visited Dr. Leeper complaining of pain in the left ankle following a fall at her home. Dr. Leeper applied a gelo cast, an elastic bandage and put respondent on crutches for eleven days. Respondent fell again on either September 1 or September 3, 1972. Dr. Leeper testified she "bruised her arm and knee and also [had] leg cramps at night." A neurosurgeon, Dr. John D. Noonan, examined respondent on October 17, 1973. Approximately two weeks prior to that time she had fallen and hurt her left foot. In December, 1973, Dr. Leeper diagnosed respondent's pain in the left front of the neck and left shoulder as acute bursitis.

When respondent was asked on direct examination to "briefly state to the jury and the court what type of ailments you have now, what you are complaining of so far as your physical condition is concerned," she replied "I have a lot of pain in my low back and runs down my leg and in my neck and shoulders." She had not worked, upon Dr. Leeper's advice, since July, 1972. Her medical expenses totaled $1,953.14.

The preceding evidence, coupled with MAI 4.01 verbatim, certainly could have led the jury to believe that any one of the three falls or the bursitis was an "occurrence" which produced or contributed to injuries for which respondent should receive compensation when obviously she was only entitled to recover for injuries resulting, in whole or in part, from the collision. Thus, MAI 4.01 should have been modified in accordance with its "Notes on Use" to confine the jury to reflecting only on the results of the automobile accident. Failure to so modify was prejudicial error. *Russell v. Terminal Railroad Ass'n. of St. Louis*, 501 S.W.2d 843, 847[2] (Mo. banc 1973); *Vest v. City National Bank and Trust Co.*, 470 S.W.2d 518, 521–22[2–3] (Mo.1971); *Clark v. McCloskey*, 531 S.W.2d 36, 38–40[4] (Mo. App.1975); *Homm v. Oakes*, 453 S.W.2d 679, 681–682 (Mo.App.1970); *Jurgeson v.*

*Romine*, 442 S.W.2d 176, 177–78[4–5] (Mo. App.1969).

Due to the error in submitting respondent's damage instruction, the case must be reversed. Retrial will be on all issues because of the impracticality of severing damages from liability. *Vest v. City National Bank and Trust Co.*, supra, 470 S.W.2d at 522[3]; *Jurgeson v. Romine*, supra, 442 S.W.2d at 178[5].

Judgment reversed and cause remanded.

All concur.