Robert A. WEINBAUER,
Plaintiff-Respondent,

v.

Wilbert BERBERICH et al.,
Defendants-Appellants.

No. 41692.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 16, 1980.

F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for defendants-appellants.

Godfrey P. Padberg, Padberg, McSweeney, Slater, Merz & Reid, St. Louis, for plaintiff-respondent.

SNYDER, Judge.

Robert A. Weinbauer (Weinbauer) sued Wilbert and Elsie Berberich d/b/a Berberich Delivery Service (Berberich) and the Pulitzer Publishing Company for personal injuries he sustained in a rear-end collision. A jury found in favor of Weinbauer and against Berberich in the sum of $30,000, and in favor of the Pulitzer Publishing Company. Berberich appeals the verdict in favor of Weinbauer.

Berberich alleges the trial court erred in three respects. He claims it was error to give Weinbauer's verdict directing Instruction No. 3 which submitted the negligence of "defendants" but not the negligence of the driver of the truck who was not a party to the suit. He challenges the trial court's overruling of his objection to Weinbauer's counsel's argument of the amount of damages in the final portion of his summation when damages had not been mentioned in the opening portion of the summation. Finally, Berberich challenges Weinbauer's damages Instruction No. 7 because it did not take into consideration two injuries received by Weinbauer subsequent to the automobile collision.

The points raised are ruled against Berberich and the judgment of the trial court for Weinbauer is affirmed.

Weinbauer was employed as a package beer driver for Grey Eagle Distributors. He unloaded 30 pound cases of beer from a Grey Eagle truck when delivering them to commercial establishments. Once or twice a week he unloaded 165 pound half-barrels or kegs of beer during his deliveries. He earned more money when he drove the keg routes. At the time of the collision on January 21, 1977, Weinbauer was returning to the company warehouse in a Grey Eagle truck. The truck was stopped on an uphill grade at a red electric traffic signal, heading south on Lindbergh Boulevard in St. Louis County, Missouri. While Weinbauer was stopped, a Berberich delivery truck driven by an employee, Dennis Venegoni, collided with the rear of the Grey Eagle truck which Weinbauer was driving and sent the Grey Eagle truck 20 to 25 feet into the intersection.

Venegoni testified that he applied the brakes within 100 yards of the Grey Eagle truck, but they failed, and he could not stop his vehicle. The emergency or hand brake was inoperable. Venegoni shifted from fourth gear to second (low) gear which slowed the delivery truck but did not stop

it. Venegoni also stated that after the collision Weinbauer declined medical attention. The Grey Eagle truck was driveable after the collision and Weinbauer continued to the warehouse where he reported the accident. His employer sent him to consult the company physician, Dr. Arenos, on January 24, 1977. Weinbauer complained of neck pain, lower back pain and headaches to Dr. Arenos, who prescribed medication and hot packs. Weinbauer saw Dr. Arenos a few times but felt no improvement. He contacted his family doctor who referred him to a neurosurgeon, Dr. Jonathan Gold. Dr. Gold examined him on February 16, 1977, and found muscle spasms in Weinbauer's neck but no neurological defects. Dr. Gold prescribed only conservative treatment, including pain reliever medication, and released Weinbauer to return to work. Nevertheless, Weinbauer consulted Dr. Gold on two other occasions, complaining of back pain.

On February 28, 1977, on the advice of a co-worker and a relative, Weinbauer consulted Dr. Gerald Knapp, an osteopath. He complained to Dr. Knapp about his back, but not his neck. Dr. Knapp treated him by manipulation, and continued these back treatments until February 1979. Dr. Knapp testified that his examination revealed no injury to Weinbauer's neck.

After the collision, Weinbauer incurred two other injuries. In May 1977, while he was unloading a keg of beer from the delivery truck he fell and injured his ankle. In February 1978, while he was lifting a keg, he pulled a leg muscle. Weinbauer testified on cross-examination that his back hurt when he fell in the May incident. He further admitted on cross-examination that the fall was not related to any injuries sustained as a result of the vehicular collision.

Berberich's first contention is that the verdict director, Instruction No. 3 (MAI 17.-16 Modified) [1], was erroneous for omitting a specific reference to the driver Venegoni, for omitting a finding of Venegoni's negligence and for improperly submitting the rear-end collision doctrine. Berberich argues that MAI 18.01 [2] was the proper submission. This point is ruled against Berberich.

MAI 18.01 is the verdict director to be used when agency is in issue. Agency is not in issue here. Berberich has not denied agency. Indeed, Berberich introduced the deposition of his employee, Venegoni, who stated that he was employed by Berberich to deliver newspapers by truck. Immediately prior to the accident Venegoni had picked up printing equipment from the St. Louis Post-Dispatch and was driving to the northwest plant of the newspaper. After the accident, Venegoni contacted Berberich according to procedures established by Berberich. This undisputed evidence proves the employer-employee relationship between Berberich and Venegoni.[3] Thus, the agency of Berberich and Venegoni was not an issue, and MAI 18.01 was not the appropriate instruction.

1. Instruction No. 3 (MAI 17.16, Modified):
"Your verdict must be for the plaintiff and against the defendants, Wilbert Berberich and Elsie Berberich, doing business as Berberich Delivery Company, if you believe:
First, defendants' motor truck came into collision with the rear of the motor truck operated by plaintiff, and
Second, defendants were thereby negligent, and
Third, as a direct result of such collision, plaintiff sustained damage."

2. MAI 18.01:
"Your verdict must be for plaintiff [on plaintiff's claim for damages] [1] if you believe:
First, the driver Jones [was an employee of Ajax and] [1] was operating the Ajax Company motor vehicle within the scope and course of his employment by Ajax [at the time of the collision] [1], and
Second, Jones violated the traffic signal, and
Third, Jones was thereby negligent, and
Fourth, as a direct result of such negligence the plaintiff sustained damage.
Notes on Use
[1] Use bracketed terms if in issue."

3. The amended petition alleged that Venegoni was the servant and employee of Berberich. Berberich filed a general denial in answer to Weinbauer's amended petition. The evidence, introduced in Berberich's case, supports the allegation of the amended petition and refutes the denial of agency propounded in Berberich's general denial. No evidence was offered disputing agency.

Berberich argues that MAI 18.01 was appropriate because it would contain a reference to the driver of his vehicle, Venegoni, and require a finding of Venegoni's negligence. While Berberich does not specifically assert that these elements are necessary to the instruction in order to submit the doctrine of respondeat superior, he seemingly makes this claim.

■ "Respondeat superior is based on the principle that the master controls the actions of his servants and therefore the servants' actions are attributable to the master." *Light v. Lang,* 539 S.W.2d 795, 799[10–11] (Mo.App.1976). "[T]he master is liable for the negligence of the servant on the ground that one who does a thing by and through another, his servant, does it himself and is responsible for the manner in which it is done." *Stith v. J. J. Newberry Co.,* 336 Mo. 467, 79 S.W.2d 447, 458[25] (1934). 53 Am.Jur.2d *Master and Servant* § 417 (1970). Normally, the question of whether respondeat superior applies (that is, whether an employment relationship exists and whether the employee was acting within the scope of his employment) is a matter for the jury. *Blind v. Saks Fifth Avenue, Inc.,* 349 S.W.2d 425, 432[5] (Mo. App.1961). Nevertheless, where the facts are undisputed and only one reasonable conclusion can be drawn from them, the matter is a question of law. *Smoot v. Marks,* 564 S.W.2d 231, 236[6] (Mo.App.1978).

■ Berberich's undisputed evidence showed the existence of an employment relationship and showed that the task which Venegoni was performing at the time of the accident was within the scope of his employment. Berberich is bound by this uncontradicted testimony of his witness. *Silberstein v. Berwald,* 460 S.W.2d 707, 710[3–4] (Mo.1970). Thus, the application of respondeat superior is a matter of law to be handled by the court's instructions. Here, the court correctly submitted a verdict director which ignored the issue of agency. Such a submission was proper. *Price v. Ford Motor Credit Co.,* 530 S.W.2d 249, 255[15] (Mo.App.1975); *Young v. Frozen Foods Express, Inc.,* 444 S.W.2d 35, 40[5, 6] (Mo.App.1969).

Berberich also challenges the verdict director as an improper submission of the rear-end collision doctrine, claiming the jury had a roving commission to find it negligent on any act. Particularly, Berberich points to evidence that the brakes on his delivery truck were faulty and contends the jury could base its verdict on Berberich's negligent failure to maintain good brakes rather than on its driver's negligent conduct.

The rear-end collision doctrine recognizes that:

"if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle."

*Hughes v. St. Louis Public Service Co.,* 251 S.W.2d 360, 362[3] (Mo.App.1952). See also *Witherspoon v. Guttierez,* 327 S.W.2d 874, 880[5] (Mo.1959); *Wagoner v. Hurt,* 554 S.W.2d 587, 589[1–3] (Mo.App.1977).

■ The brake question was raised by Berberich. Weinbauer was not required to negate brake failure as a defense.

" 'A plaintiff's verdict directing instruction properly hypothesizing his affirmative facts and theory of recovery is not erroneous in omitting reference to or ignoring defendant's evidence which merely tends to disprove the plaintiff's affirmative allegations and evidence. *Merrick v. Bridgeways,* 362 Mo. 476, 241 S.W.2d 1015, 1021 [1951].' "

*Turner v. Cowart,* 450 S.W.2d 441, 444[1, 2] (Mo.1961); *Glowczwski v. Foster,* 359 S.W.2d 406, 410[5] (Mo.App.1962). Berberich's challenge to Instruction No. 3 fails.

■ Berberich contends in his second point that the trial court erred in permitting Weinbauer's counsel to argue the

amount of damages in the closing portion of his summation when he had not mentioned the amount of damages in the opening portion. This point is ruled against Berberich.

"The generally accepted rule in argument of a case is that counsel having the affirmative (usually the plaintiff) should develop in his opening statement the points and matters which he wishes to present. The defendant may answer such argument and develop all the points he considers of importance. Then the plaintiff in closing may reply to and counter any argument the defendant has made. The closing argument should be in the nature of a rebuttal."

*Misch v. C. B. Contracting Co.*, 394 S.W.2d 98, 102[10] (Mo.App.1965). The trial court is given considerable discretion in refusing or permitting closing argument in order to allow exceptions to the general rule in cases where matters were inadvertently overlooked in the first part of argument. *Shaw v. Terminal Railroad Association of St. Louis*, 344 S.W.2d 32, 36–37[2, 3] (Mo.1961); *Misch v. C. B. Contracting Co., supra*, 102–103.

In the first part of the closing argument, Weinbauer's counsel discussed Weinbauer's medical complaints (headaches, backaches), medical diagnosis (muscle spasm) and loss of work. No specific monetary amounts were mentioned. In closing argument, Berberich's counsel referred to medical records and testimony which included Weinbauer's medical complaints, commented about his loss of work and even introduced income figures, noted the medical diagnosis, and questioned the very existence of the injury.

Weinbauer's counsel concluded the second part of his closing argument with additional comments on Weinbauer's loss of work, with rebuttal on Weinbauer's income, with a discussion of his pain and spasms and with a reference to the amount prayed for in the petition. He also talked about medical expenses and loss of wages. He used charts for the first time in explaining Weinbauer's element of damages. The objection of Berberich's counsel was overruled.

Berberich relies on *Shaw v. Terminal Railroad Association of St. Louis, supra.* There, counsel for plaintiff discussed only liability in the first part of his closing argument and did not mention plaintiff's injuries or damages. Defense counsel, too, limited his closing argument to the issue of liability. In the second part of his closing argument, plaintiff's counsel included comments on lost wages, medical expenses, pain, suffering and plaintiff's knee injury and concluded by asking for a $25,000 verdict. The court held that a plaintiff may not withhold all argument on injuries and damages until the second part of closing argument. The holding has no application to the present case because here there was a discussion of injuries and at least a general discussion of damages in the form of loss of work.

■ Counsel for Weinbauer on voir dire stated he was suing for $50,000. Furthermore, in the present case, Berberich's counsel's closing argument dealt extensively with the subjects of injuries and damages, which constituted a waiver of any objection to Weinbauer's concluding argument by opening the door to rebuttal to the Berberich arguments. See *Barrett v. Morris*, 495 S.W.2d 100, 104–105[7, 8] (Mo.App.1973), and *Midwest Library Service, Inc. v. Structural Systems, Inc.*, 566 S.W.2d 249, 251–252[1–2] (Mo.App.1978) upon which Berberich also relies. In *Midwest Library Service, Inc.*, plaintiff's counsel discussed only liability in the first part of closing argument. Defendant's closing argument referred to amounts claimed by plaintiff as damages. The second part of plaintiff's closing argument mentioned the specific amount of damages. After noting the general rule expounded earlier here, the court found that defendant had waived any error arising from plaintiff's discussion of damages because defendant itself had raised the issue in its closing argument. See also *Sullivan v. Hanley*, 347 S.W.2d 710, 714–716[5–6] (Mo.App.1961).

There was no abuse of the trial court's discretion in permitting Weinbauer's counsel to discuss the amount of damages in the

second part of his closing argument. See *Bertram v. Wunning*, 385 S.W.2d 803, 807–808[7, 8] (Mo.App.1965) where the plaintiff's argument did not suggest an amount for the verdict but did comment on the amount prayed for in the petition. The court affirmed, noting that discretion resided in the trial court in ruling on the propriety of argument.

■ Both the first part of closing argument by Weinbauer's counsel and the closing argument by Berberich's counsel contained several references to injuries and damages. The omission of a specific amount of damages in the first part of closing argument does not preclude the suggestion of an amount in the second part. See *Colon v. Roeder*, 418 S.W.2d 152, 162 (Mo.1967). This point is without merit.[4]

Finally Berberich contends that the trial court erred in submitting the measure of damage instruction, Instruction No. 7 (MAI 4.01).[5] He argues that the instruction should have been modified to refer specifically to the rear-end collision because the jury mistakenly could have awarded damages for two subsequent occurrences mentioned in the evidence. This point is also ruled against Berberich.

The first subsequent occurrence resulted in an injury to Weinbauer's ankle in May 1977. His testimony about this incident was equivocal. On direct examination he said that a keg of beer fell off the truck and hurt his ankle, and he attributed the falling of the keg to his awkwardness in lifting it because of the injury to his back. On cross-examination he said that instead of a keg falling off the truck he, himself, fell off the truck and hurt his ankle. He repeated that he fell because of the way he had to handle the kegs but upon more intensive cross-examination he said it was just an accident and he was not sure how it happened. There is no medical testimony about an injury to his ankle.

The second occurrence subsequent to the rear-end collision took place in February 1978 and the evidence indicated that Weinbauer pulled a muscle in his leg because of the awkward position he was in when he lifted the keg, the awkward position being caused by the back injury. He repeatedly testified as to the awkward position necessitated by his back injury when he lifted kegs.

■ It is true, as appellants claim, that the Notes on Use on MAI 4.01, say that "the term 'occurrence' must be modified by substituting some descriptive phrase which specifically describes the compensable event in any case where the evidence discloses more than one event which is claimed to have caused plaintiff's injury or damages." Appellants challenge the instruction because of the two additional incidents subsequent to the rear-end collision. The incident of the pulled leg muscle need not be considered because the only evidence of its cause was that it occurred when respondent was lifting a keg in an awkward way because of the prior injury to his back. Thus the jury could have found that this occurrence resulted from the original back injury.

■ The ankle injury is different. The evidence as to the cause was conflicting and it is possible that the ankle injury had no connection with the rear-end collision injuries. However, there was no medical expense in connection with the ankle injury. The only evidence that respondent's back might have been injured at the same time as the ankle was injured was his statement, "Well, yeah, it hurt when I fell," meaning

---

4. Berberich objected at trial and argues on appeal that Weinbauer's counsel made an improper per diem argument. But, as Berberich's brief notes, a limited form of per diem argument was upheld in *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 301–304[1–3] (Mo. banc 1978). Weinbauer's counsel followed the approved, limited per diem argument of the *Graeff* case.

5. Instruction No. 7:

"If you find the issues in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence."

his back hurt when he fell. There was no medical expense in connection with the ankle and it is difficult to conceive of the members of the jury being misled by that one statement of respondent that his back hurt when he fell at the time he injured his ankle. An examination of the transcript and consideration of all of the evidence in the case leads this court to conclude that the jury would not have believed that the back or neck injury complained of was caused by respondent's fall from the truck.

■ The Notes on Use to MAI 4.01 say that the instruction should be modified in any case where there is more than one event which is claimed to have caused plaintiff's injury. Weinbauer is not claiming that the fall caused his injury. The use of Missouri Approved Instructions is mandatory. The Notes on Use must also be followed. *Russell v. Terminal Railroad Association of St. Louis*, 501 S.W.2d 843, 847[2] (Mo. banc 1973); *Peak v. W. T. Grant Co.*, 409 S.W.2d 58, 60[1] (Mo. banc 1966); *Vest v. City National Bank and Trust Co.*, 470 S.W.2d 518, 520–521[1] (Mo.1971). Rule 70.-02(b). A strict reading of the Notes on Use for MAI 4.01 might allow an interpretation that the instruction in the case under review should have been modified to specify only the rear-end collision as the occurrence. A thorough consideration of all the facts, however, can lead only to the belief that this minor accident, injuring Weinbauer's ankle and minimally hurting his back, should not require a modification of the prescribed instruction. The collision

and the injuries resulting from it were the subjects of all but a few lines of evidence in the entire transcript. The evidence of the fall was minimal and there was no medical evidence relating to the fall. The jury was not misled by the instruction as it was given.

■ Even assuming, without· deciding, that it was error to give the instruction without modification, it was not prejudicial error. The prejudicial effect of deviating from the Missouri Approved Instructions and the Notes on Use is to be judicially determined, Rule 70.02(c), and an analysis of the testimony in this case leads to the conclusion that there was no prejudice.

Each of the cases cited by Berberich to support his claim of error involves one or more major occurrences other than the one which is the subject of the suit and is distinguishable from the case under review. In all but one case the secondary injuries occurred prior to the injury being sued for.[6]

The only case cited by Berberich which might be said to support his position involved injuries sustained in occurrences subsequent to the one giving rise to the suit. In *Thweatt v. Haefner*, 539 S.W.2d 734 (Mo.App.1976) plaintiff sued for injuries sustained in an automobile collision which occurred in September 1971. In October 1971 plaintiff fell in her home, injuring her left ankle. She fell again in September 1972. In October 1973 she fell a third time, injuring her left foot. The doctor applied a

**6.** Plaintiff had a prior work-related injury and a congenital back condition in *Clark v. McCloskey*, 531 S.W.2d 36 (Mo.App.1975). The jury in *Clark* could have believed plaintiff's injuries were caused by the prior work-related occurrence, the auto accident which was the subject of the suit or the congenital difficulty.

In *Wagoner v. Hurt*, 554 S.W.2d 587 (Mo.App. 1977), the plaintiff recovered on a workman's compensation claim for an injury to his left knee in January 1971 and sued for an injury to his left knee when his automobile was struck in the rear in October 1974. The court ruled that MAI 4.01 should have been modified.

In *Homm v. Oakes*, 453 S.W.2d 679 (Mo.App. 1970) plaintiff was injured in an auto accident in May 1964, one month prior to a June 1964 accident which was the subject of his lawsuit.

Because it was impossible to say whether the treatments related to the first or second accident, the instruction should have been modified.

The plaintiff in *Russell v. Terminal Railway Association of St. Louis*, 501 S.W.2d 843 (Mo. banc 1973) injured his back in August 1965, in a home accident, again injured his back in December 1965 in a work-related accident and was still seeing a chiropractor immediately before the November 1966 occurrence for which he brought suit. The court found that the jury could believe that the injuries and damages were produced by all three incidents, anyone alone or any combination, and ruled MAI 4.01 should have been modified to refer to the third specific occurrence.

cast and elastic bandage and kept plaintiff on crutches for eleven days for the left ankle injury she received in the October 1971 fall. She bruised her arm and knee in the September 1972 fall and was treated by a doctor for those injuries. She was examined by a neurosurgeon after she fell in October 1973 and hurt her left foot. The jury could have believed in *Thweatt* that any one or all of the falls could have contributed to her injuries and her medical expenses and a modification of MAI 4.01 was obviously required to restrict the jury's consideration to the injuries sustained in the one occurrence.

The juries in the cases cited by appellant could have been misled if MAI 4.01 had not been modified. In the case under review, the evidence was of such a nature that the jury was not misled. Modification of the instruction was not required to avoid prejudice to Berberich.

There was no error. The judgment is affirmed.

STEWART, P. J., and WEIER, J., concur.