**Emma PRATT, Plaintiff-Appellant,**

v.

**Oscar CUDWORTH,
Defendant-Respondent.**

**No. WD 33037.**

Missouri Court of Appeals,
Western District.

May 25, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Aug. 3, 1982.

Max Von Erdmannsdorff of Von Erd-
mannsdorff & Zimmerman, Kansas City,
for plaintiff-appellant.

W. A. Shull III of Legal Aid of Western
Missouri, Warrensburg, for defendant-re-
spondent.

Before CLARK, P. J., and MANFORD
and KENNEDY, JJ.

MANFORD, Judge.

Judgment was entered in accord with a
jury verdict which determined ownership of

cash monies in the sum of $4,776.00. This appeal followed. The judgment is affirmed.

The parties are hereinafter referred to by their party designation at trial, with appellant designated as plaintiff and respondent designated as defendant.

In summary, plaintiff alleges that the trial court erred in (1) overruling motions for a directed verdict and for judgment N.O.V. or in the alternative a new trial because the judgment was against the weight of the evidence, and (2) the admission of irrelevant and immaterial evidence which was prejudicial.

Plaintiff operates a 32-room hotel in Clay County. Defendant was a seven-year resident in the hotel, and except for brief stays in other rooms, he spent the greater portion of the time in Room 101. On January 24, 1978, he moved, apparently due to poor health. On January 25, 1978, an employee of the hotel, Robert Lee Dailey, while cleaning the room vacated by defendant, found two envelopes of cash under the carpeting beneath the bed. Dailey took the money to plaintiff. While plaintiff and Dailey were counting money, Cecil Townsend, defendant's son-in-law, arrived at the hotel to pick up some personal items left behind by defendant.

Thinking the money belonged to defendant, plaintiff presented the money to Townsend who displayed surprise. At trial, plaintiff and Dailey testified that Townsend had told them he had asked defendant three times if he (defendant) had any monies "stashed" in his room, and defendant stated he had no money. In contrast, Townsend testified that plaintiff had stated, "Cecil, I've been telling you for a long time that your father-in-law had money, and you haven't believed me ... here's proof of it."

Townsend took the money and deposited it the same day. Later that day, plaintiff called Townsend and told him she had made a mistake in giving him the money, that the money was hers, and that she had hidden it a long time ago. Plaintiff further testified that after Townsend had left with the money, she recognized handwriting on the envelopes as hers, including serial numbers from some of the bills. Plaintiff further stated that she noticed a "United Funds" emblem on one of the envelopes and she was the only resident who received mail from the United Funds. She recalled hiding the money in defendant's room on July 4, 1971 during defendant's absence. She added that she had hidden money all her life and placed the money in defendant's room because her own rooms had been burglarized several times and that defendant was almost always in his room. She stated she saved the money from several months rental for the purchase of an automobile. When plaintiff requested Townsend to return the money, she stated that Townsend replied that he would "work something out".

Townsend refused to return the money, and plaintiff filed this action on February 3, 1978. Pending disposition of the case, the money was deposited with the circuit clerk.

During pretrial discovery, the deposition of plaintiff was taken, during which she presented a 1957 calendar book containing over 140 serial numbers in plaintiff's handwriting. The contents of this book were copied by defense counsel. It was later determined that 143 of the serial numbers in the book matched those of bills on deposit with the clerk. Additional inquiry determined that plaintiff's monthly income was about $2,000 per month, and she had expenses of about $300 per month. Additionally, she received about $600 per month from social security. At trial, over objection, defense counsel read to the jury a list of deposits made by plaintiff during 1971. The total of these deposits was nearly $9,000.

At trial, Townsend testified that defendant had taken up residence at the hotel near the end of 1970. He added that in January,

1978, plaintiff asked defendant to move because of the latter's declining health and his inability to care for himself. Townsend further stated that at plaintiff's request, he waited for some 15 minutes before she presented the money to him. Townsend denied discussing money with the defendant, but further contended that defendant did not trust banks. In further discussion of defendant, Townsend testified that upon return from his sister's funeral, defendant treated his suitcase like "Wells Fargo freight" and would sleep with pants, which contained his wallet, upon his pillow. Townsend stated that defendant would check under the bed before going to sleep. He testified that he "took about a half a day and wrote down every serial number" from the bills in question. The list he made he never showed to plaintiff. Townsend asserted that defendant brought the money from his sister to Kansas City in a money belt and that defendant had found it in a "new trash can" or Bible.

Defendant testified by deposition due to his infirmity and age (90 years). Defendant stated that before her death, his sister had given him some money which she had received from an estate. Defendant had no recollection when these events occurred. He did not count the money, but "allowed there was about 4 or $5,000." He stated after keeping the money in his billfold and suitcase, he later hid it under the bed. He had no recollection how the money was contained or details of the hiding place. Defendant stated he forgot about the money even though he "needed that money, too, a lot of times". He was a welfare recipient and had told authorities he had no money. Evidence revealed he had a savings account in Colorado. Defendant admitted he told people he "didn't have nothing" when asked if he had left any money behind. He denied finding any money in a trash can or Bible.

Another employee of plaintiff, Hugh Lowe, testified that plaintiff "did everything she could for [defendant]." He further testified that plaintiff kept cash in a strongbox in his (Lowe's) room in the hotel.

Plaintiff's son testified that plaintiff had a practice of hiding money in various places in the hotel, often holding it for something she wanted. He stated that at one time, plaintiff paid $14,000 in cash for a piece of property, she hid $1,500 in a cupboard, $1,200 under a dining room table, and several hundred dollars in an icebox. He added that both the $1,500 and $1,200 were stolen from plaintiff, and that the questioned money was being saved by plaintiff for the purchase of an automobile.

The evidence closed and the jury returned its verdict for defendant. Judgment was entered, plaintiff's motion for new trial was overruled, and this appeal followed.

In her argument in support of her first alleged error, plaintiff urges that the judgment was "against the overwhelming weight of the evidence". It is her position that she was entitled to a directed verdict at the close of the evidence, for judgment N.O.V., or in the alternative, a new trial because the judgment was against the weight of the evidence.

Defendant denied that plaintiff was the true owner of the money, thereby placing upon her the burden of proving her claim to the money. Plaintiff presented evidence, primarily by her own testimony and the calendar book which contained numbers which matched serial numbers of 143 of the questioned bills.

■■■ On this appeal, plaintiff argues that the calendar book was absolute proof of her ownership. Although she made such a strong contention, it has been ruled that "a plaintiff's own books and records are not [conclusive] documentary evidence." *Norfolk & Western Railway Company v. Riss International Corporation*, 560 S.W.2d 332, 335 (Mo.App.1977) and *Bakelite Company v. Miller*, 372 S.W.2d 867, 871 (Mo.1963). The posture of plaintiff's evidence, although being partly uncontradicted, was not conclusive, thus leaving the matter to the deter-

mination of the jury. The jury was at liberty to disbelieve plaintiff's evidence if it so elected. *Bakelite, supra*, and *Gambrell v. Kansas City Chiefs Football Club*, 621 S.W.2d 382, 384 (Mo.App.1981).

When a plaintiff's claim of entitlement to a directed verdict is reviewed on appeal, an appellate court reviews the evidence most favorable to the defendant. Upon trial, even if a defendant offers no evidence, a directed verdict for plaintiff is rarely granted upon the premise that the trier of fact might not believe the plaintiff's evidence. *Watts v. Handley*, 427 S.W.2d 272, 275 (Mo.App.1968). In the instant case, although argued to the contrary by plaintiff, the record does not indicate that plaintiff's evidence was overwhelming and defendant did present credible evidence which in combination, did not require or mandate a directed verdict. The trial court did not err by refusing grant of plaintiff's motion for directed verdict.

Plaintiff further argues that the trial court erred in denying her motion for judgment N.O.V. or alternatively, a new trial. Concerning the issue of plaintiff's motion N.O.V., reviewing courts ignore evidence favorable to plaintiff and consider only evidence adduced or conceded by the defendant and such plaintiff's evidence which permits no other reasonable inferences. *Clark v. McCloskey*, 531 S.W.2d 36, 37 (Mo.App.1975). From a review of the evidence, weighed against the standard in *Clark*, it cannot be concluded that the evidence supported the granting of plaintiff's motion N.O.V.

Plaintiff's contention that she was entitled to a new trial because the verdict was against the weight of the evidence is not cognizable on appeal because the award of a new trial on such basis rests upon the discretion of the trial court. Once such relief is denied by the trial court, an appellate court cannot interfere. *Gambrell, supra*, and *Joseph v. Orscheln Bros. Truck*

*Line, Inc.*, 609 S.W.2d 238, 240 (Mo.App. 1980).

Point (1) is found to be without merit and is ruled against plaintiff.

Under point (2), her final point, plaintiff contends that the trial court erred when it admitted evidence of her bank and savings records. She complained at trial, and does so again on this appeal, that such evidence was immaterial and irrelevant, and by such admission, the jury was confused to the prejudice of plaintiff.

As to the admission of evidence concerning the financial status of parties to litigation, except where and when relevant to an issue joined, see *Cantrell v. Superior Loan Corp.*, 603 S.W.2d 627, 641 (Mo.App.1980) and *Bremen Bank & Trust Co. v. Bogdan*, 498 S.W.2d 306, 312 (Mo.App.1973). The record before this court indicates that the challenged evidence was in the form of two exhibits, one relating to plaintiff's bank deposits and the second relating to her savings account. This evidence was introduced in defendant's attempt to show that plaintiff had deposited her entire income and therefore, she could not have saved $4,776 in cash to hide under the rug.

Under the rule in *Cantrell*, a line must be drawn between evidence which relates to a party's (plaintiff herein) ability to have saved the cash and evidence of financial transactions which is irrelevant and immaterial and serves only to prejudice a jury against the party. Stated another way, defendant (in the instant case) would be entitled to introduce evidence of plaintiff's income during the period that plaintiff claimed she accumulated the cash, but not the details of her banking transactions unless those transactions had some direct probative value. *Cantrell, supra*. Evidence related to plaintiff's bank deposits did not prove or indicate that plaintiff was incapable of saving the cash while she was making the deposits listed. Appellant argues that even though such evidence proved she had the money to hide, the effect of such evidence prejudiced her by directing jury sym-

pathy away from her and to the favor of defendant. This particular evidence notwithstanding, the record also indicates that the jury was otherwise advised of plaintiff's income during the period of time in question. This evidence was as to her ownership of real property and mutual funds.

Plaintiff also had rental income of approximately $2,000 per month. Plaintiff contends that this latter source of income was in turn the source of the cash in dispute. On this same issue, but in contrast, the record reveals (by way of deposition) that defendant was a welfare recipient and his savings had been depleted. Plaintiff introduced evidence of defendant's poor health, costs of his nursing home care, and the possibility of medical costs owed by defendant. As pointed out above, the financial status of plaintiff was before the jury without the introduction of the challenged evidence relating to plaintiff's bank deposits. It cannot be concluded under the particular facts and circumstances of the whole record that the introduction of the evidence relating to plaintiff's bank deposits was prejudicially erroneous.

The remaining or second challenged evidence was the record of plaintiff's savings accounts, which had total balances of nearly $20,000. One account was opened in May, 1970 by an initial deposit of $8,000. A second account was opened in November, 1970 with an initial deposit of $11,000. The only other activity on these accounts shown by the record was the accrual of interest. It must be concluded that the records relative to savings accounts were unrelated to the issue of whether or not plaintiff was depositing her income.

Counsel for defendant was unsure of the relevancy of this evidence and later conceded that it was not "significant". Defendant asserts that the records were not passed to the jury, but the fact remains that it cannot be presumed the jury was not permitted to view them since they were in fact admitted into evidence. There is no question that the introduction of the record of plaintiff's

savings accounts was error because such record bore no relevancy to any issue in the case.

The question that this court must answer is whether such error was prejudicial. As noted above, there was evidence of plaintiff's financial status from sources additional to the bank deposits, and the same applies to the evidence of record of plaintiff's savings accounts. Under the particular facts and circumstances upon the whole of the record, it cannot be concluded that the introduction of the record of plaintiff's savings accounts was prejudicially erroneous. A reviewing court is not required to reverse a judgment unless an error thus committed materially affected the merits of the action under review. *Coffman v. Faulkner*, 591 S.W.2d 23, 26 (Mo.App.1979). It is the conclusion of this court that the introduction of such evidence did not, upon the whole of the record, materially affect the merits of this action. *Coffman, supra.*

Point (2) is found to be without merit and is ruled against plaintiff.

The judgment is in all respects affirmed.

All concur.