**Ewell LITTELL, Jr., Plaintiff-Respondent,**

v.

**BI–STATE TRANSIT DEVELOPMENT AGENCY, a Corporation, Defendant-Appellant.**

No. 32714.

St. Louis Court of Appeals.

Missouri.

Nov. 21, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 26, 1967.

Motion to Transfer Denied Feb. 12, 1968.

John D. Schneider, St. Louis, for appellant.

James F. Koester, St. Louis, David G. Dempsey, Clayton, for respondent.

CLEMENS, Commissioner.

The plaintiff got a verdict and judgment of $5,000 for personal injuries and $1,000 for property damages from a collision be-

tween his car and defendant Bi-State's bus. The defendant appeals.

Defendant contends the trial court erred in (1) denying voir dire examination to discover bias against plaintiff's obligation to prove negligence, (2) refusing to let defendant read, as admissions against interest, allegations plaintiff had made against a co-defendant, (3) permitting plaintiff to argue injuries unsupported by evidence, and (4) allowing excessive damages.

### Voir Dire Examination

Plaintiff pleaded and later submitted defendant's negligence in failing to keep a lookout. On voir dire defendant asked:

"[Is there] anybody on the panel who feels that they could not sit on this case, they feel that their feelings concerning the law is such that they could not give effect to the law that is up to the plaintiff to prove that my client was negligent, that is, it's up to the plaintiff that the burden of proof is on the plaintiff to prove negligence? Anybody who feels that way? Anybody who feels that he would not give ― ― ―."

When plaintiff objected defense counsel explained to the court that he was not asking for a commitment from the veniremen, but did want to know whether any of them had personal feelings against the proposition that a plaintiff has to show the defendant is negligent before plaintiff can recover. The court sustained plaintiff's objection but did let defendant ask whether the veniremen would have any compunction in following the law as thereafter declared by the court.

The issue is this: On voir dire may a defendant ask the panel whether the existing state of their minds is such that they could not give effect to the law placing the burden

on the plaintiff to prove defendant's negligence? Our answer will depend on a litigant's right to discover the existence of bias, and the limitations imposed on that inquiry to prevent counsel from using the question to mask an argument, to arouse sympathy, to get jurors to speculate on contingencies, or to commit them to a verdict.

 The constitutional right to a trial by jury would be a mockery of justice if it did not guarantee a jury with minds free of bias.[1] As said in Murphy v. Cole, 338 Mo. 13, 88 S.W.2d 1023 [2], 103 A.L.R. 505: "If for any reason, whether statutory or not, a prospective juror is not in a position to enter the jury box with an open mind, free from bias or prejudice in favor of or against either party to the cause, and decide the case upon the evidence adduced and the law as contained in the court's instructions, he is not a competent juror."

██ Since bias often lies deep within the minds of prospective jurors, counsel should be allowed a wide latitude to expose that bias.[2] The cited cases—and others collected in 18 Mo.Digest, Jury, ☞131—support the statement made in 31 Am.Jur., Jury, § 139:

"A wide latitude is allowed counsel in examining jurors on their voir dire. The scope of inquiry is best governed by a wise and liberal discretion of the court, but the adverse litigants should be given the right to inquire freely about the interest, direct or indirect, of the proposed juror, that may affect his final decision. Thus, reasonable latitude should be given parties in the examination of jurors to gain knowledge as to their *mental attitude toward the issues* to be tried for the purpose of aiding them in striking jurors, if they are not successful in challenging

1. Kendall v. Prudential Ins. Co. of America, Mo., 327 S.W.2d 174 [3]; Moore v. Middlewest Freightways, Mo., 266 S.W. 2d 578 [9].

2. Faught v. St. Louis-San Francisco Ry. Co., Mo., 325 S.W.2d 776 [1]; Wright v.

Chicago, B. & Q. R. R. Co., Mo., 392 S.W.2d 401 [9]; Smith v. Nickels, Mo. App., 390 S.W.2d 578 [4]; National Bank of Rolla v. Romine, 154 Mo.App. 624, 136 S.W. 21 [1].

them for cause. However, as a general rule, the examination of jurors on voir dire should be restricted to questions which are pertinent and proper for testing the capacity and competency of the juror. An examination of a prospective juror on his voir dire is proper so long as it is conducted strictly within the right *to discover the state of mind of the juror* with respect to the matter in hand or any collateral matter reasonably liable to unduly influence him, and questions which go primarily to the ascertainment of any *probable bias* or ground of incompetency, as a basis of a challenge for cause, or possibly of a peremptory challenge, are permissible." (Our emphasis.)

 This principle has been followed to allow questions about the states of jurors' minds on a variety of subjects—states of mind that counsel believed might affect a prospective juror's ability to dispassionately reach a verdict based on the evidence and the law of the case. Thus, in civil cases it is proper to probe the minds of prospective jurors to discover prejudice because of sympathy for a child,[3] racial bias,[4] the large amount sued for,[5] social or business relations,[6] or holding a policy of insurance.[7] Similarly, in criminal cases this right to discover bias is properly invoked to discover conscientious scruples against the death penalty,[8] convicting on circumstantial evidence,[9] and the defenses of insanity[10] and self-defense.[11] And a defendant in a criminal case may seek to determine whether prospective jurors have any fixed opinions against the principle of presumption of innocence.[12]

 We believe defendant's voir dire question came within the scope of properly discoverable bias—whether the prospective jurors' feelings were such that they could not give effect to the law that the burden of showing negligence was on the plaintiff. Several factors bear out the possibility of such bias. The defendant was a large corporation being sued by a working man. It is general knowledge that some injuries, like those to workmen, may be compensable regardless of fault. The existence of liability insurance is general, and often misunderstood to afford compensation regardless of fault. Some of the veniremen *may* have had so firm a belief that a person injured by a bus should be compensated that it would prevent them from returning a verdict against the injured plaintiff even though defendant was not negligent. All those beliefs are unfounded and unreasonable, but we cannot say they do not exist in the minds of some prospective jurors. The point before us is whether the defendant was *entitled to discover* whether that bias did exist. The wide latitude allowed litigants to discover bias demanded that the defendant, in the interest of securing a fair and impartial jury, be allowed to make proper inquiry on the subject.

We say proper inquiry, because the right to discover bias is hedged with restrictions to insure that the inquiry is not perverted. We do not find that defendant's voir dire question violated these restrictions.

 One restriction is that the question must be limited to the prospective ju-

---

3. Koeppel v. Koeppel, Mo.App., 208 S.W. 2d 929 [7].

4. Hawkins v. Missouri Pac. Ry. Co., 182 Mo.App. 323, 170 S.W. 459 [19].

5. Wright v. Chicago, B. & Q. R. R. Co., Mo., 392 S.W.2d 401 [10].

6. Linstroth v. Peper, 203 Mo.App. 278, 218 S.W. 431 [3].

7. Morris v. Duker, Mo., 414 S.W.2d 77 [5].

8. State v. Ramsey, 355 Mo. 720, 197 S.W. 2d 949 [6].

9. State v. Miller, 156 Mo. 76, 56 S.W. 907 [1]; State v. Punshon, 133 Mo. 44, 34 S.W. 25 [2].

10. State v. Linders, Mo., 224 S.W.2d 386 [2].

11. State v. Lassieur, Mo., 242 S.W. 900 [2].

12. 50 C.J.S. Juries, §§ 241 b, 246 a, 275 a (2).

rors' *existing state of mind*.[13] The converse is that the question may not seek to make the jurors speculate on contingencies or commit them to a certain verdict.[14] In State v. Mosier, Mo., 102 S.W.2d 620 [7], the court said: "The correct procedure is for counsel to ask the members of the panel whether, if the court later instructs them in a specified manner, they have any opinion or conscientious scruples such as would prevent them from returning a verdict accordingly * * *." Here, defendant's question was not that precise but it did seek to learn the jurors' existing state of mind; it did not seek any commitment.

■ Another restriction is that on voir dire counsel may not tell the panel what the court's instructions will be.[15] The vice of such speculative statements on voir dire is readily apparent, but we see no such vice here. Defendant's question said nothing about instructions. He was inquiring about an essential part of plaintiff's case: the burden of showing defendant's negligence. This was not speculative because the trial court had to instruct on burden of proof by giving MAI 3.01.

■ Still another curb on voir-dire bias questions is that they not be used to disguise arguments or pleas for sympathy.[16] We have examined the question itself and the colloquies before and after the court's ruling, and find not a trace of camouflage. In fact, the trial court announced that its ruling denying the question was based on Smith v. Nickels, Mo.App., 390 S.W.2d 578. The voir dire question there was "Would any of you *hesitate to find in favor of my client* if you felt my client wasn't to blame for this accident?" That question was condemned because it sought to commit the jury to a verdict, a vice not present here.

We rule that defendant's voir dire question was not improper. Although poorly worded, its substance was correct. Its form was unobjectionable since it did not violate the principles of commitment and speculation, nor purport to tell the jury what the court's instructions would be; nor was it argumentative. The question would have been better if it had simply asked the panel whether any of them had a fixed opinion against the proposition that in a case of this kind the plaintiff could recover only if the jury believed the defendant was negligent.

■ We are aware of the discretion allowed a trial court in ruling on the propriety of voir dire questions. But "it is also one of the highest duties of courts, in the administration of the law concerning selection of jurors and juries, to seek to accomplish that purpose [an impartial jury]." Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695 [6–10], 127 A.L.R. 711. In the interest of justice to the defendant's effort to determine the impartiality of the panel, the trial court should have allowed the question.

### Pleadings as Admissions Against Interest

Defendant's next point is that the court erred in excluding—as admissions against the plaintiff's interest—allegations he made in a separate count of his petition against a co-defendant. Plaintiff had sued both defendant Bi-State and the Laclede Gas Company. Before trial he dismissed his count against Laclede. The plaintiff contends, primarily, that his pleading was properly excluded because allegations made against one defendant may not be used by

13. Smith v. Nickels, Mo.App., 390 S.W.2d 578 [7]; State v. Heickert, Mo., 217 S.W.2d 561 [2].

14. Wright v. Chicago, B. & Q. R. R. Co., Mo., 392 S.W.2d 401 [11]; State v. Katz Drug Co., Mo., 352 S.W.2d 678 [4].

15. State v. Bolle, Mo., 201 S.W.2d 158 [2, 3]; State v. Richardson, 349 Mo.

1103, 163 S.W.2d 956 [2]; State v. Mosier, Mo., 102 S.W.2d 620 [7].

16. Scott v. Western Union Tel. Co., Mo. App., 109 S.W.2d 912 [1]; Wright v. Chicago, B. & Q. R. R. Co., Mo., 392 S.W.2d 401 [12].

another defendant to contradict a plaintiff's testimony; that this is so even if one of the original defendants is no longer in the case. This issue calls for a brief statement of plaintiff's evidence.

Plaintiff's car and defendant's bus collided when both were northbound, side by side, on McCausland Avenue just north of Manchester. McCausland had two northbound traffic lanes. Initially plaintiff's car was moving north in the curb lane and defendant's bus was moving north in the inner lane. Ahead of plaintiff, in the curb lane, Laclede had excavated part of the street, thereby closing the curb lane to plaintiff and other drivers going north in that lane. Laclede had put up a warning barricade near the excavation. The plaintiff's car collided with defendant's bus when plaintiff turned left into the inner lane at a point near the barricade. The plaintiff testified he first saw Laclede's barricade while crossing Manchester, about 200 feet south of it. Plaintiff also testified he was driving only 3 to 5 m. p. h.; that he began his left turn from the curb lane into the inner lane when he was still 40 feet short of Laclede's barricade.

The gist of plaintiff's count against Laclede was that Laclede had not given him adequate warning of its excavation; that its barricade was so dangerously close to the excavation that plaintiff had to make a quick turn to his left into the path of the bus. This allegation was inconsistent with plaintiff's testimony that he had first seen the barricade when 200 feet away from it and had turned left when still 40 feet short of it.

Pleadings are addressed to the court, not the jury. It is said that pleadings are generally inadmissible in evidence in the same case because "they do not possess the characteristics inherent in admissions againt interest." Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d 75 [1–6], citing 4 Wigmore on Evidence, p. 5. The mischief of bringing trial pleadings before the jury is readily apparent: if one pleading is read, another could be read in explanation of it and utter confusion would result.

An exception to this rule against using pleadings in evidence has come into our law. Although *trial* pleadings are inadmissible in evidence because they would be confusing, this is not true of abandoned pleadings or pleadings in another lawsuit.[17] Hence, these may be used as admissions against a party's interest or to impeach a witness. On full consideration here, we conclude, however, that the plaintiff's dismissed count against Laclede was not admissible against him as an admission against interest. This, because plaintiff's count against Laclede was a permissible multiple plea, and a plea against one defendant may not be used in evidence against the plaintiff by the other defendant.

Thus, in the Flex-O-Lite case, supra, there was a three-car collision, and plaintiff sued his host-driver and the owners and drivers of the other two cars. The host-driver testified favorably for plaintiff. Plaintiff then testified, but his testimony did not inculpate the defendant host-driver. So the other defendants sought to impeach plaintiff by showing plaintiff's pleaded allegations of negligence against his host-driver. The trial court excluded the pleaded allegations, and was upheld on appeal. The court ruled that "multiple pleas may not be used as admissions upon another issue in the same case." Defendant Bi-State would distinguish our case from the Flex-O-Lite case because there the co-defendants were still in the case, while here plaintiff had dismissed as to defendant Laclede. Superficially that would cast plaintiff's count against Laclede into the

---

17. Dowzelot v. Rawlings, 58 Mo. 75, l. c. 77 (1874), citing 1 Greenleaf on Evidence, §§ 195, 527; cases collected in 12 Mo.Digest, Evidence, ⊜208(6). See also the three cases cited here by defendant: Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889 [14]; Carter v. Matthey Laundry & Dry Cleaning Co., Mo., 350 S.W.2d 786 [1–2]; Richardson v. Wendel, Mo., 401 S.W.2d 455 [11].

abandoned pleading category and make it admissible against plaintiff.

A more similar issue arose in Macheca v. Fowler, Mo., 412 S.W.2d 462 [1–6], and was ruled contrary to Bi-State's contention of abandoned pleading. In the Macheca case there was a chain collision. The plaintiff sued the drivers of two preceding cars and also defendant Fowler, whose car had struck plaintiff's from the rear. The two drivers of the front cars were discharged on motions for summary judgment, and plaintiff went to trial against Fowler alone. On Fowler's cross-examination of plaintiff he sought to impeach him by reading plaintiff's inconsistent allegations of negligence against the two discharged defendants. In ruling these pleaded allegations inadmissible, the court stressed the principle that in cases of multiple pleas a pleading on one issue may not be used as an admission on another issue in the same case. At 412 S.W.2d l. c. 465, the court said: "The failure of [plaintiff's] charges against the other two defendants did not defeat his right to continue to assert against the defendant here the matters alleged as negligence on this defendant's part. Plaintiff had the right to try his case on the issues made against this defendant without regard for the charges previously made against the two involuntarily dismissed defendants."

▇▇▇ The only distinction is that in Macheca v. Fowler the other defendants went out of the case on a summary judgment, while here plaintiff dismissed his count against defendant Laclede. This does not detract from the principle—stated in both the Flex-O-Lite and Macheca cases—that if a plaintiff makes inconsistent claims against multiple defendants, those pleas "do not possess the characteristics inherent in admissions against interest" and "may not be used as admissions upon another issue in the same case." We hold that the trial court properly denied defendant Bi-State's offer to use plaintiff's allegations against defendant Laclede as admissions against his interest.

*Argument of Injuries*

For its last point Bi-State charges that the trial court erred in allowing plaintiff to argue he had suffered damage to a nerve since there was no evidence to support that argument.

In the collision with Bi-State's bus plaintiff was making a left-turn arm signal and his arm got caught between his car and the bus. Plaintiff went to his doctor complaining of soreness of his neck, arm and shoulder, and headaches. The doctor found a resistance to movement in plaintiff's neck, shoulder and arm, and noticed "tenderness at the base of the neck over the group of nerves that come out of the neck, what we call a plexus." In answering questions about the general nature of such injuries the doctor said: "* * * a straining injury or fracture or any more severe injury causes pressure on these nerves and they produce headache, pain in the shoulder, the arm and also in the neck." The doctor prescribed neck traction to overcome headaches and "this tenderness in the brachial plexus." The doctor denied finding anything that warranted a neurological examination but added: "Very often you have pain down the course of a nerve from the neck without any neurological findings." He found nothing to substantiate pressure on any nerve, but said plaintiff's complaints of pain did indicate that possibility.

In answering plaintiff's first hypothetical question the doctor gave his opinion about the cause of plaintiff's neck and shoulder symptoms. These, the doctor said, were caused by the collision. Later, on redirect examination, the doctor was asked his opinion whether plaintiff "did have a nerve-root pressure as a result of the injury to his neck?" The doctor said, "I can't answer that question." This was the substance of evidence about nerves.

We digress here to call attention to the "Committee's Comment" to MAI 4.01: "During the instruction conference the parties and the Court should discuss (on

the record) just what damages are supported by the evidence and can properly be argued to the jury. In this way jury arguments can proceed without undue interruptions." Pursuant to this, at the close of the evidence, the trial court heard counsel on the scope of their proposed arguments. The defendant objected on two grounds to plaintiff's arguing anything concerning nerve-root pressure: that there was no evidence that nerve-root pressure existed, and because plaintiff's doctor could not give an opinion on causal connection between nerve-root pressure, if it did exist, and the collision. The court overruled defendant's objection.

After this ruling plaintiff's counsel argued and expanded this element of damage, vigorously and at length. Three times he referred to plaintiff's "nerve-root damage." Again he said plaintiff had a "nerve being pinched" and that plaintiff had been treated for "a nerve-root impingement." He argued, "This is an injury to the cervical spine with damage to a nerve root * * *." These statements were unfounded exaggerations, inflating the casual mention of nerves into a positive assertion of serious physical impairment. As defendant now reasons, these were "money words" calculated to incite an excessive verdict.

 The vice of plaintiff's argument rests on the violation of two axiomatic principles. The first is that a plaintiff must produce substantial evidence to show both the existence of an injury and its causal connection with defendant's negligence.[18] Here, the plaintiff utterly failed to show either that he had suffered "nerve damage" or that it was the result of the collision. The other principle is that counsel should neither argue nor draw inferences from matters not in evidence.[19] This is nothing new. In the early case of Brown v. Han-

nibal & St. Joseph R. R. Co., 66 Mo. 588, l. c. 599, the court said: "The practice of traveling out of the record in an address to a jury, and making statements of facts which there was no evidence tending to prove, has been often condemned, and in a case of gross misconduct in this regard, this court should reverse a judgment obtained by the party whose attorney should so conduct himself, and to avoid such a result, the better and safer practice is, in argument to a jury, to keep within the record and the testimony." More recently the principle was applied in Holmes v. Terminal R. R. Ass'n of St. Louis, 363 Mo. 1178, 257 S.W.2d 922 [13]. There an issue arose quite similar to ours. We quote from l. c. 928–929:

"During the argument, plaintiff's counsel mentioned that no spinal myelogram had been taken of plaintiff, and that it would show whether he had a disc injury, stating: 'There is something wrong there, something is wrong with the man's back * * *. If he has a disc injury to his back it is a serious thing, and if that little nerve is pinched in there it will cause suffering—.' Defendant's objection on the ground there was no evidence that plaintiff sustained a disc injury was overruled. There was no substantial evidence of a disc injury. Plaintiff's doctors did not establish such an injury, and the testimony of defendant's doctors was that there was no disc injury. [Citing cases.] The objection should have been sustained."

Here, the court should have sustained defendant's objection to plaintiff's argument.

 We are mindful of the proper limitation upon the power of an appellate court to reverse the decision of a trial court for its rulings on discretionary matters. But the trial court's erroneous ex-

18. Berry v. Kansas City Public Service Co., 341 Mo. 658, 108 S.W.2d 98 [11]; Moore v. Glasgow, Mo.App., 366 S.W.2d 475 [9]; Zoeller v. Terminal R. R. Ass'n of St. Louis, Mo.App., 407 S.W.2d 73 [2–4].

19. Reese v. Illinois Terminal R. R. Co., Mo., 273 S.W.2d 217 [11]; Davis v. City of Independence, Mo., 404 S.W.2d 718 [3]; Wartenbe v. Car-Anth Mfg. & Supply Co., Mo.App., 362 S.W.2d 54 [4].

ercise of judicial discretion has long been held to be reviewable. In re Wilson, 95 Mo. 184, 8 S.W. 369, 1. c. 371. And the "deference to the trial court in discretionary matters is not to be self-administered by appellate courts to anesthetize against sensitivity to prejudicial error." Faught v. Washam, Mo., 329 S.W.2d 588, 1. c. 600.

Considering the rulings of the trial court on such sensitive matters as selecting an impartial jury and keeping counsel's damage argument within the record, we believe there was reversible error.

The judgment must be reversed and the cause remanded for a new trial.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause remanded for a new trial.

ANDERSON, P. J., WOLFE, J., and JOHN C. CASEY, Special Judge, concur.