Jayson W. HART, a minor, by his mother and Next Friend, Beverly J. Hart, Plaintiff-Appellant,

v.

Catherine Dean FORBES, Defendant-Respondent.

No. WD 32546.

Missouri Court of Appeals, Western District.

Feb. 23, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

Application to Transfer Denied June 14, 1982.

John H. Norton of Norton, Pollard & Norton, Inc., North Kansas City, for plaintiff-appellant.

Walter R. Simpson and James G. Lindquist of Sheridan, Sanders & Simpson, P. C., Kansas City, for defendant-respondent.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

MANFORD, Judge.

Plaintiff sought recovery of damages for personal injuries. Judgment was entered upon a jury verdict for defendant. The judgment is affirmed.

Plaintiff presents three points of error, alleging the trial court erred (1) by allowing improper argument of defendant; (2) by denying plaintiff's reference to a dollar amount in the final portion of the closing argument; and (3) by restricting plaintiff's voir dire examination.

The sufficiency of the evidence is not challenged. Jayson Hart, a minor aged 5 years, was struck by an automobile driven by 17-year-old Catherine Forbes, whom during trial, was called by plaintiff as a witness. The accident occurred on April 9, 1978 in Kansas City North, Clay County, Missouri. Neither the weather nor road conditions entered into the issues. Defendant was northbound on North Highland Street at about 25 m.p.h. when she observed a group of children playing in the vicinity.[1] Defendant slowed her vehicle to 15 m.p.h. and continued northward, when she observed plaintiff in a driveway at the west edge of the street to her left and ahead of her vehicle. The defendant continued at a speed of about 15 m.p.h. She then heard someone yell and observed a woman (later identified as plaintiff's mother) on a porch to her right. From the corner of her eye, the defendant observed plaintiff run into the street. Defendant attempted to stop her vehicle. Plaintiff was struck by the right front of defendant's vehicle, and there was evidence of ten feet of skid mark. Defendant's vehicle moved two to three feet after impact. Plaintiff's action was on primary negligence and the jury was so instructed. The jury returned a unanimous verdict for defendant.

In his first point, plaintiff charges and argues that the trial court erred in overruling his objection to argument by defendant. Plaintiff contends that defendant was, over objection, permitted to argue the contributory negligence of plaintiff when contributory negligence was never pleaded or instructed upon, and that as a matter of law, plaintiff (because of his age [5 years] ) could not be contributorily negligent.

Defendant counters plaintiff's contentions by arguing that defendant's final argument was in line with the court's instruction upon the issue of causation, and not contributory negligence. The challenged portion of the argument and the court's ruling thereon are as follows:

"Folks, you know what the direct cause of this accident was. It was Jayson—

---

1. Vicinity is not further described in the evidence, nor is it clear whether plaintiff was in this group of children. The group consisted of approximately 12 children.

MR. NORTON: (Plaintiff's counsel) Your Honor, I'm going to object to that. Contributory negligence is not an issue in these proceedings, and I ask that you advise the jury accordingly.

THE COURT: Overruled. Argument of counsel.

MR. SIMPSON: The direct ⁰cause of this accident was Jayson Hart's deciding, for whatever reason it was, to run across that street when that car had to be so close. This accident wouldn't have happened if Jayson Hart had stayed on the curb, or if he walked out into the southbound lane—let that car pass by. The direct cause of this accident was Jayson Hart—not anything Cathy Forbes did.

Well, I want to talk to you just a minute about the damages in this case. I don't think it will be necessary for you to get to the issue of damages—because the Court tells you that if nine or more of you agree, nine or more of you can bring in a verdict in this case. And if you get into the jury room and after you've selected your foreman you take a vote on the issue of liability, or, as Mr. Norton ways (sic), whose fault it was, and nine or more of you agree that it was not Cathy Forbes' fault—her conduct did not directly cause this accident, then that's your verdict and there's no reason to go any further."

No further objection was raised by plaintiff. The record further reveals the following within the final portion of plaintiff's closing argument:

(By Mr. Pollard, for the plaintiff)

"A couple of responses to what Mr. Simpson says. What he has told you in effect, ladies and gentlemen, is that Jayson Hart was negligent in this case and that he cannot recover. What he is saying in effect to this little boy, who was five years of age at the time of this accident: 'You were negligent, and you can't recover in this case.'

You'll find no instruction whatsoever that says you can find him negligent; because that is steeped in the law and steeped in common sense: you don't hold five-year-old children to the same degree of care that we have. So don't let Mr. Simpson mislead you in that regard."

■ The trial court is vested with broad discretion concerning final argument. *Eddings v. Keller*, 400 S.W.2d 164 (Mo. 1966). See generally, *Pappas v. Bi-State Development Agency*, 565 S.W.2d 475 (Mo. App.1978); *Jenson v. Walker*, 496 S.W.2d 317 (Mo.App.1973). This discretion, however, is not so broad as to permit argument beyond issues, or record and urge prejudicial matters or urge a theory of claim or defense which the law does not justify or which conflicts with the trial court's instructions. *Carrel v. Wilkerson*, 507 S.W.2d 82 (Mo.App.1974) and *Stark v. Vanderpool*, 613 S.W.2d 203 (Mo.App.1981). The determination of the prejudicial effect of final argument is within the discretion of the trial court and such discretion will not be disturbed absent the showing of an abuse thereof.

The instant record reveals that counsel for defendant, prior to the objection and the ruling thereon, had made reference to the court's instruction. This reference included evidence upon the matters of lookout, stopping, slowing and sounding a warning. The reference further discussed that if the jury believed from the evidence that the defendant was negligent, and as a direct result of such negligence plaintiff had been injured, then they should find for the plaintiff. As can be observed from the above quoted portion from the record, counsel for defendant then stated, "Folks, you know what the direct cause of this accident was. It was Jayson . . .", and plaintiff interceded with his objection. After the ruling, defense counsel continued without further objection.

■ Defendant argues that the argument was on the issue of causation, not contributory negligence. Defendant further contends that the evidence on causation was substantial to show that defendant's acts and omissions were not the direct and proximate cause of plaintiff's injuries. In the course of the trial, plaintiff called defendant as a witness. The evidence

obtained by this approach supports defendant's contention that plaintiff's acts/omissions and not those of defendant, were the direct and proximate cause of the accident. Defendant correctly points out that the burden of proof as to causation rests with the plaintiff, *Osterhaus v. Gladstone Hotel Corporation*, 344 S.W.2d 91 (Mo. 1961), and this same burden applies to minors as plaintiffs. *Kramer v. May Lumber Co.*, 432 S.W.2d 617 (Mo.App.1968) and *Beuttenmuller v. Vess Bottling Co. of St. Louis*, 447 S.W.2d 519 (Mo.1969).

■ An overview of defendant's argument discloses that it was confined to the cause of the accident. It contained no reference to plaintiff's lack of care, but was directed to causation. The defendant had the right to argue causation. The jury was instructed that it had to believe and find that the defendant was negligent and that such negligence caused plaintiff's injuries. The record further reveals a solitary objection interposed prior to any specific reference to plaintiff's acts or omissions. There was no request for a continued objection, and while it is clear from such objection what plaintiff was complaining of, there was no further objection to defendant's argument. In addition, plaintiff, in the final portion of his closing argument, argued that he could not be negligent. It was these various events which the trial court had before it.

The trial court was in a position to observe the focus of defendant's argument and "it is within the broad discretion of the trial court to determine the prejudicial effect of the argument ..." *Stark, supra*, 613 S.W.2d at 204. It cannot be concluded from review of the evidence upon the record before this court, coupled with the reading of the final argument by counsel for the parties, that any collateral issue or any theory of claim or defense which the law does not justify and which conflicted with the court's instruction was presented herein. There was no abuse of discretion by the trial court. Point (1) is found to be without merit and is ruled against plaintiff.

■ In point (2), plaintiff charges that the trial court erred by sustaining defendant's objection. Plaintiff claims that this was tantamount to prohibiting him from arguing a dollar amount for damages in the final portion of his closing argument. Defendant had objected because of plaintiff's failure to mention a dollar amount within the initial portion of his closing argument.

It should be pointed out that the jury returned a unanimous verdict for defendant. Plaintiff's argument is twofold. First, plaintiff contends that comments in the initial portion of his closing argument sufficiently included reference to damages, enabling him to urge a specific dollar amount in the final phase of his argument. Secondly, plaintiff contends that defendant discussed the issue of damages which further enabled plaintiff to discuss a specific dollar amount. The pertinent part of this argument reads:

(Plaintiff, initial)

(By Mr. Norton) "I want to talk to you briefly about the damage in this particular case. There are generally two types of damage. One is what we call special damages, which are really nothing more than out-of-pocket expenses. They're monies that go to other people, not Jayson Hart. They go to pay the doctors, the hospital—all those people who provided service to Jayson Hart. Those are the small part of any case. And in this particular case you'll recall that we presented all those bills into evidence. And I've totalled those figures up for you. The total amount of what we call special damages—hospital bills, wheel chairs, all that stuff—amounted to $2,699.50.

You also heard testimony from Dr. Littlejohn that Jayson will be required to undergo yearly checkups, which at today's rates, of $53.00 a visit, will amount to—ten years at fifty-three dollars, which amounts to $530.00.

All told, the specials, then, amount to $3,229.50.

In addition to special damages there's also what we call general damages. Those are the large part in the case, and

they go to compensate Jayson Hart for the loss he sustained in this particular accident. They go to compensate him for the pain and suffering he had from this particular accident. And I urge you, if any of you have any doubt as to whether or not he had any pain during this period of time—read the hospital records which are in evidence, and they'll tell you.

More importantly than that, they go to compensate for the anxiety he had as a result of this accident—the nightmares he's had—the terror that this one moment will undoubtedly impress upon his mind for the rest of his days.

In addition, you heard Dr. Littlejohn tell you that the injury he had to his leg is permanent. One leg is longer than the other—half an inch longer. And that will be the case for the next 60 years of Jayson's life—something we can't change.

Every bit as important to that is the injury to the mind of Jayson Hart. Nothing you people can do can take away the terror that that moment has impressed upon his mind, and which he'll bear with him the next 61 years of his life. You can't remove that. You can't erase that memory. He'll have it.

You heard his mother tell you the nightmares he's had; and that's certainly indicative of the problems this has caused Jayson Hart."

(Defendant)

(By Mr. Simpson) "Well, I want to talk to you just a minute about the damages in this case. I don't think it will be necessary for you to get to the issue of damages—because the Court tells you that if nine or more of you agree, nine or more of you can bring in a verdict in this case. And if you get into the jury room and after you've selected your foreman you take a vote on the issue of liability, or, as Mr. Norton ways (sic), whose fault it was, and nine or more of you agree that it was not Cathy Forbes' fault—her conduct did not directly cause this accident, then that's your verdict and there's no reason to go any further.

As I told you at the beginning of this case, this was a story that fortunately had a happy ending. And I think that it does. Because even though Jayson Hart had, I'm sure, some pain and discomfort—

THE COURT: You have three minutes.

MR. SIMPSON: Thank you, Your Honor.

—for a couple of months after this accident, by that summer he was back outside running and playing with the kids. And Mr. Norton told you in the opening statement that the evidence would be that he was having trouble in school. And Mrs. Hart—it was difficult to pin her down to it, but she finally admitted, 'Well, I can't see any difference between the work that he did around home and at the Mothers' Day Out program than he's doing now. There's no change in his manual dexterity—no change in his intelligence.'

His leg healed solidly, and he was back out playing.

If Cathy Forbes had not been as cautious as she was that day, folks, we'd be talking about a story with a very tragic ending."

(Plaintiff's final)

"So we're not going to ask you for any particular amount of money; we're going to ask you to return a verdict in favor of Jayson Hart consistent with your good conscience and your genuine concern for over sixty years of disability.

So what is it worth? Is sixty years worth sixty thousand dollars?

MR. SIMPSON: Your Honor, I object to any argument about amount of damages. There was no argument in the first part.

THE COURT: Sustained.

MR. POLLARD: So what is it worth, ladies and gentlemen? We are asking you to return a verdict for this young man consistent with your genuine concern. It's entirely within your hands."

Two things are obvious from the foregoing: (1) plaintiff did not argue a dollar

amount for damages in the initial part of his closing argument and (2) defendant made no reference to any dollar amount through the entire final argument. The rule adopted and made applicable herein was announced by our state Supreme Court in *Goldstein v. Fendelman*, 336 S.W.2d 661, 667 (Mo.1960) wherein that court held:

"Nevertheless, while we recognize that the trial court has considerable discretion in the matter of arguments of counsel, we consider it unfair and improper to permit plaintiff's counsel to do this for the first time in his closing argument, when defendant's counsel has made no argument as to amount. In *Votrain v. Illinois Terminal R. Co.*, Mo.Sup., 268 S.W.2d 838, 844, we said: 'Generally, the purpose of closing argument by counsel for the party having "the burden of the issues" is to answer the argument of counsel for the other party, the one "holding the negative." ' " See also *Shaw v. Terminal Railroad Ass'n of St. Louis*, 344 S.W.2d 32, 36 (Mo.1961); *Midwest Library Serv. v. Structural Systems*, 566 S.W.2d 249, 251 (Mo.App.1978); *Barrett v. Morris*, 495 S.W.2d 100, 104 (Mo.App. 1973).

From *Goldstein*, it is obvious that the matter of final argument is within the sound discretion of the trial judge, but there is a prohibition against plaintiff's counsel arguing a dollar amount in the final portion of closing argument (absent reference in the initial phase and/or comment relative thereto by defense counsel) on the basis of fairness to both parties. This court cannot agree with plaintiff's contention that the initial portion of his closing argument discussed damages in the sense and in such manner that would permit him to discuss a dollar amount in the final portion of his argument. Plaintiff urges this court to follow its prior ruling in *Barrett v. Morris, supra. Barrett*, however, is distinguishable and not controlling, because in *Barrett*, plaintiff's counsel, in the initial part of his closing argument, mentioned a dollar amount. This court, in that decision, quoted the pertinent portion of counsel's remarks, which was: The case presented "a

starting point, $24,000.00 before you get into the question of anything to ascribe to a head injury and I am going to talk to you more about that when I come back, but this is going to give counsel for the defendant, if he chooses, an opportunity to give you his approach to the question of damages and he does indeed have that opportunity". In addition, this court pointed out that defense counsel in *Barrett* argues both liability and damages. The instant case does not fall within *Barrett*. In addition to *Barrett*, counsel for plaintiff urges this court to follow the ruling in *Weinbauer v. Berberich*, 610 S.W.2d 674 (Mo.App.1980). Plaintiff quotes the following from *Weinbauer* as controlling:

"Both the first part of closing argument by Weinbauer's counsel and the closing argument by Berberich's counsel contained several references to injuries and damages. The omission of a specific amount of damages in the first part of closing argument does not preclude the suggestion of an amount in the second part. See *Colon (sic) v. Roeder*, 418 S.W.2d 152, 162 (Mo.1967)." *Weinbauer* at 679.

Plaintiff's reference to *Weinbauer*, including the above quote, falls short of reflecting all the factors which the court in *Weinbauer* considered in its ruling. The ruling in *Weinbauer* was: "*There was no abuse of the trial court's discretion in permitting Weinbauer's counsel to discuss the amount of damages in the second part of his closing argument.*" (Weinbauer at 678–79, emphasis added). Factors which the court considered in reaching its ruling in *Weinbauer*, which are not contained in the instant case and which were argued by defense counsel included the use of medical records, reference to loss of work, introduction of income figures and the medical diagnosis, including the questioning of the very existence of the injury. In yet another portion of its opinion, the *Weinbauer* court concluded that the closing argument of defense counsel, having dealt exclusively with the elements of injuries and damages, constituted a waiver of any objection to plaintiff's argument. *Weinbauer* at 678.

In *Conlon* (cited by the *Weinbauer* court), the court emphasized that the verdict was not excessive, that plaintiff in the first part of closing argument devoted a page to liability and some six pages of argument to injuries and damages. As the court pointed out, this was followed by approximately one paragraph on liability and some fifteen pages on injuries and damages by defendant. The court then noted an interesting, and as it concerns the instant case, a distinguishing feature. The court quoted the following language from plaintiff's argument 418 S.W.2d at 162:

"' * * * You arrive at your verdict, * *. You are the folks who are going to do it. I have confidence you will do it. I know you will do it fairly. Mr. Derrick never mentioned a figure you should bring it. *I think that should be left in your discretion. You can't bring in more than twenty-five thousand.*' " (emphasis added)

Concerning the above language, our state Supreme Court commented as follows:

"It is doubtful that plaintiff's closing argument here can be construed as suggesting any specific amount which the jury should return. It would be more accurately characterized as advice on the limit of the money damages sought; the jury was not bound by it and could award what 'in your discretion' would be a proper amount of damages." *Conlon* at 162.

Because of its particular facts and circumstances, the instant case is found not to be within *Barrett, Weinbauer* or *Conlon.* Rather, this case falls under the general rule announced in *Goldstein.* The trial judge did not abuse his discretion in sustaining defendant's objection. Point (2) is found to be without merit and is ruled against plaintiff.

For his final point (3), plaintiff contends that he was improperly restricted or limited in his voir dire examination. Plaintiff specifically complains that the court erred in sustaining defendant's objection to plaintiff's question as follows:

"MR. NORTON: Anyone else?—Now, is there anybody on this panel who has the opinion or belief that a five-year-old child should have the same understanding and appreciation of danger that a seventeen-year-old driver should have?

MR. SIMPSON: Your Honor, I think we're going a little too far, trying to attempt to commit this jury.

THE COURT: I think so. Sustained."

and then further:

"MR. NORTON: Is there anybody on this panel who is of the opinion or belief that children of a young age should be punished for doing unpredictable or unaccepted things?

MR. SIMPSON: Objection, Your Honor.

MR. NORTON: Your Honor, I think I should be entitled to find out whether anybody holds that opinion or belief; because it materially affects the outcome of this case.

THE COURT: Sustained."

■ The scope of voir dire examination falls within the sound discretion of the trial court and rulings thereon will not be disturbed unless there is a showing of an abuse thereof. *Iseminger v. Holden,* 585 S.W.2d 154 (Mo.App.1979). Plaintiff argues that the instant court abused its discretion by sustaining defendant's objections. Plaintiff argues that the questions posed were an attempt to ascertain whether or not there was any fixed opinion or belief against children because they often did unexpected or unpredictable things. It was upon this premise, plaintiff argues, that the attempt was being made to ascertain further whether members of the jury panel could differentiate between the appreciation of danger on behalf of a child of five years of age as opposed to a seventeen-year-old driver. Defendant argues that the court did not abuse its discretion because plaintiff's questions, as posed, were argumentative and asked the jury panel to speculate and commit itself to a verdict.

Plaintiff cites for this court *Huckstep v. Richards,* 609 S.W.2d 731, 733 (Mo.App. 1980), quoting the following language:

"It is a well recognized principle of law that greater precautions are necessary to fulfill the duty of keeping a careful look-

out when children of tender years are involved. *Fortner v. St. Louis Public Service Co.*, 244 S.W.2d 10, 14 (Mo.1951). A child on or near a roadway is almost devoid of any real appreciation of danger, and their thoughtless and impulsive acts are to be expected and guarded against. *Wintjen v. Kloeppel*, 549 S.W.2d 564, 566 (Mo.App.1977)."

Unquestionably, the foregoing quotation from *Huckstep* is a long recognized and sound declaration of law, but it must, just like any other legal precept, be kept in perspective. In *Huckstep*, the court referred to this principle in determining the issue of sufficiency of the evidence as it related to the defendant driver. *Huckstep* is found not to be controlling.

█ In the instant case, exception cannot be noted to the soundness of this principle, rather, the issue is the particular circumstances under which plaintiff attempted to apply and utilize the principle. Plaintiff contends that effort was being made to determine possible bias and prejudice within the jury panel. The record reflects no bad faith by plaintiff, rather, it reflects the result which would have occurred had plaintiff been permitted to proceed with his questions. Stated another way, the questions as posed could have very well resulted in commitment of jurors to the cause of plaintiff and against defendant on the basis of age difference alone, prior to and without the benefit of having heard the evidence. The questions as posed are argumentative in that they sought to place before the jury panel a proposition of whether or not, under all attending circumstances, defendant conformed to the standard of the highest degree of care.

This case is similar to *Bruemmer v. Becker*, 492 S.W.2d 781, 782 (Mo.1973), a case involving a five-year-old pedestrian struck by defendant's vehicle. During voir dire, the following questions were asked, objected to, the objection sustained, and the ruling upheld on appeal:

"' * * * Now, is there anyone on the Jury panel who does not feel that people operating automobiles in residential areas have an obligation to keep a lookout ahead and laterally, aside, including visible sidewalk area for people playing on the sidewalk area that might go into the street?

\* \* \* \* \* \*

Is there anyone on the panel who does not feel that adult drivers have an obligation to realize that young children playing near the street may unexpectedly carelessly dash into the street?' "

In *Bruemmer*, the court ruled that these questions were argumentative and held that the trial court had sufficient reason to refuse such questions, citing *Littell v. Bi-State Transit Development Agency*, 423 S.W.2d 34, 38 (Mo.App.1967). *Littell* announced the rule that "[s]till another curb on voir-dire bias questions is that they not be used to disguise arguments or pleas for sympathy," and further, that "question[s] must be limited to the prospective jurors' *existing state of mind.* The converse is that the question may not seek to make the jurors speculate on contingencies or commit them to a certain verdict." *Littell* at 37–38.

In the instant case, the trial judge was faced with the determination of plaintiff's claim of "seeking out" bias and prejudice as against defendant's claim that the questions posed were argumentative and called for a commitment by jurors. Under the existing facts and circumstances, and upon the conclusion reached herein that the questions as posed were argumentative and called for juror commitment, it cannot be concluded that the trial court abused its discretion and there was sufficient reason for sustaining the objection. *Bruemmer, supra.*

Point (3) is found to be without merit and is ruled against plaintiff.

For the reasons set forth herein, the judgment is in all respects affirmed.

KENNEDY, J., concurs.

CLARK, P.J., concurs in result.