**Larry, Louis and Jeanette GEROW, Appellants,**

v.

**MITCH CRAWFORD HOLIDAY MOTORS, A Missouri Corporation, and Chrysler Corporation a Delaware Corporation, Respondents.**

No. WD 55008.

Missouri Court of Appeals, Western District.

Jan. 12, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1999.

Application to Transfer Denied April 27, 1999.

---

Paul L. Redfearn, Daniel R. Brown, Kansas City, Missouri, Redfearn & Brown, P.C., for appellant.

Craig A. Smith, Gary R. Cunningham, Springfield, Missouri, Daniel, Clampett, Powell & Cunningham, for respondent.

Before SMART, P.J., ELLIS and HOWARD, JJ.

ELLIS, Judge.

Larry Gerow, Louis Gerow, and Jeannette Gerow are the surviving adult children of William and Barbara Gerow, both now deceased. The Gerow children brought a wrongful death action against Chrysler Corporation ("Chrysler") in the Circuit Court of Jackson County. They alleged that Chrysler manufactured the car in which their parents were traveling when they sustained the injuries resulting in their deaths, and that the car was defective in design and manufacture, and unreasonably dangerous when put to its reasonably anticipated use. The case was tried to a jury, which returned a verdict in favor of Chrysler on June 19, 1997. The Gerow children appeal.

At the time of the subject accident, William and Barbara Gerow owned a 1984 Plymouth Reliant K car, which they had purchased used from a dealer. On September 16, 1994 Barbara was driving the vehicle westbound on 50 Highway in Lee's Summit, Missouri. William was seated in the passenger seat, and Jeannette Gerow was in the rear seat. The vehicle left the roadway, straddled the guardrail, and struck a bridge support pillar at the southwest M–291 Highway overpass. Gasoline spilled from the fuel tank, which had been ruptured when the vehicle straddled the guardrail, resulting in fire. Witnesses pulled Jeannette and Barbara from the vehicle, but were unable to extricate William, who died at the scene. Barbara Gerow died 15 days later. Jeannette survived the accident.

The three adult children of William and Barbara Gerow ("the Gerows") brought suit against Chrysler, the manufacturer of the vehicle, for strict liability in the deaths of William and Barbara. They alleged that the Reliant K car was defective in design and manufacture, and was unreasonably dangerous when put to reasonably anticipated use. The allegations were based on the fact that the K car had an "underslung" fuel tank which was positioned one-quarter inch above the floor pan in front of the rear axle. According to the Gerows' expert, the positioning of the fuel tank was dangerous because it made the tank vulnerable to puncture in a reasonably foreseeable accident, and safer designs were available at the time of the vehicle's manufacture.

The Gerows brought their claim against Chrysler under the "second collision" or "enhanced injury" doctrine, which differentiates between conduct causing the accident and an alleged design defect which is the proximate cause of enhanced injuries. Expert witnesses for the Gerows testified that the injuries suffered by William and Barbara as a result of the impact with the overpass pillar alone were not sufficient to cause their deaths, but that fatal injuries resulted from the fuel fire. The action against Chrysler sought recovery only for the secondary, or enhanced, injuries from the ruptured fuel tank. Chrysler contended the vehicle was not being used as reasonably anticipated by the manufacturer at the time of the accident, and Barbara Gerow's negligence caused or contributed to the injuries. The case was tried to a jury in June, 1997 resulting in a verdict in favor of Chrysler.

The Gerows assert four points of error on appeal. In their first point, the Gerows allege that the trial court erred when it allowed Chrysler to state in closing argument that a reasonably anticipated use of the vehicle involved an operator that was alert, conscious, and awake when he or she is driving.

A jury instruction pursuant to § 537.765[1] assessing comparative fault on Barbara Gerow had been tendered by Chrysler and refused by the court.[2] In rejecting Chrysler's jury instruction as to the comparative fault of Barbara Gerow, the court stated:

> The way I understand the theory of this instruction, one of the things [Chrysler] would have to prove is she failed to use the product as product for a purpose not intended by the manufacturer. I don't think there's any evidence of that. The fact that she drove off the road and had a wreck, ... I think that's an anticipated use.

During closing argument, Chrysler's attorney made the following statements:

> MR. CUNNINGHAM (Counsel for Chrysler): [S]he was nodding as if she was asleep ... the vehicle gently veers off the road when the road makes just a gentle right-hand turn. And that's very consistent with what everyone says ... A reasonably anticipated use of this vehicle involves an operator and sometimes operators—no, I won't say sometimes—always operators are reasonable to be alert, to be conscious, to be awake when they're driving a vehicle at 55 and 60 miles per hour on open roads—
>
> MR. REDFEARN (Counsel for Gerows): Your Honor, I object to this whole line of argument. It's outside the scope of the instructions in this case and its irrelevant to the issues of this case.
>
> THE COURT: Overruled.
>
> MR. CUNNINGHAM: To make corrections, is that an unreasonable thing to expect of an operator? With regard to their anticipated use that the operator will be, in fact, awake to make corrections....An

anticipated use, is it unreasonable to think that they will avoid striking guardrails, that they will avoid getting their vehicle so that it is up on two wheels into steel I-beam posts. Anticipated use is an issue in this case. And I submit to you that is not an anticipated use.

The Gerows argue that defense counsel's statements in closing argument were an attempt to improperly inject comparative fault into the case after the comparative fault instruction had been rejected by the court. Chrysler contended that its statements were made in support of its defense to the reasonableness element in the Gerows' enhanced injury claim.

■ The enhanced injury theory is recognized in Missouri. *See Polk v. Ford Motor Co.,* 529 F.2d 259 (8th Cir. banc 1976); *Cryts v. Ford Motor Co.,* 571 S.W.2d 683 (Mo.App. E.D.1978). "The second collision doctrine merely extends the scope of liability of a manufacturer to the situations in which the construction or design of its product has caused separate or enhanced injuries in the course of an initial accident brought about by an independent cause." *Cryts,* 571 S.W.2d at 687. "[T]he defect would not have produced any injury in the absence of an intervening cause which sets the injury producing cycle into action." *Id.*

■ To make a submissible case under the enhanced injury theory in the case at bar, the Gerows were required to prove that the 1984 Plymouth Reliant K car was used in a manner reasonably anticipated. *Id.* However, *"[t]he source of the original or intervening cause is irrelevant* so long as the plaintiff's particular use of the product

1. All statutory references are to RSMo (1994) unless otherwise noted.

2. Section 537.765 states:
 Defendant may plead and prove the fault of the plaintiff as an affirmative defense. Any fault chargeable to the plaintiff shall diminish proportionately the amount awarded as compensatory damages but shall not bar recovery. For purposes of this section, "fault" is limited to: (1)[t]he failure to use the product as reasonably anticipated by the manufacturer; (2)[u]se of the product for a purpose not intended by the manufacturer; (3)[u]se of the product with knowledge of a danger involved in such use with reasonable appreciation of the consequences and the voluntary and unreasonable exposure to said danger; (4)[u]nreasonable failure to appreciate the danger involved in use of the product or consequences thereof and the unreasonable exposure to said danger; (5)[t]he failure to undertake the precautions a reasonably careful user of the product would take to protect himself against dangers which he would reasonably appreciate under the same or similar circumstances; or (6)[t]he failure to mitigate damages.
 § 537.765.

is reasonably foreseeable." *Id.* (emphasis added). The conduct of Barbara Gerow was irrelevant as long as it was reasonably foreseeable that a vehicle could leave the roadway and straddle the guardrail, puncturing the fuel tank. *Cryts,* 571 S.W.2d at 687.

The U.S. Court of Appeals for the Eighth Circuit noted that Missouri courts have found *misuse* to be reasonably anticipated. *Polk,* 529 F.2d at 266. "[T]he intended use doctrine necessarily includes foreseeable consequences of (unintentional) misuse." *Id.* "The concept of reasonably anticipated use includes misuse ... and abnormal use which is objectively foreseeable." *Threats v. General Motors Corp.,* 890 S.W.2d 327, 329 (Mo.App. E.D.1994) (*quoting Nesselrode v. Executive Beechcraft, Inc.,* 707 S.W.2d 371, 381 (Mo. banc 1986)). The fact that Barbara Gerow was driving the vehicle on a highway was an intended use. Driver error which resulted in unintentional misuse was therefore reasonably foreseeable, and the nature of the error was irrelevant to proving an enhanced injury claim. *Cryts,* 571 S.W.2d at 687. Chrysler's suggestion that Barbara Gerow fell asleep or was not alert inappropriately suggested comparative fault in the context of a claim which should have centered entirely on whether the design of the vehicle and placement of the fuel tank contributed to the fuel-fed fire.

The trial court has broad discretion concerning final argument. *Kelly by Kelly v. Jackson,* 798 S.W.2d 699, 704 (Mo. banc 1990). However, the trial court's discretion is not so broad as to permit argument beyond the issues or to urge a theory of claim or defense which conflicts with the trial court's instructions. *Hart v. Forbes,* 633 S.W.2d 90, 92 (Mo.App. W.D.1982). "In ruling on the propriety of final argument, the challenged comment must be interpreted in light of the entire record rather than in isolation." *Kelly,* 798 S.W.2d at 704. When determining the prejudicial effect of final argument, the court's discretion will not be disturbed absent a showing of abuse. *Hart,* 633 S.W.2d at 92. An abuse of discretion occurs where counsel's comments are "plain-ly unwarranted and clearly injurious" to the adverse party. *State v. Simmons,* 944 S.W.2d 165, 178–79 (Mo. banc), *cert. denied* —— U.S. ——, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997).

Since any error on the part of Barbara Gerow which might have caused the original accident is irrelevant in this enhanced injury case, Chrysler's argument as to the reasonableness of her failure to correct her direction was unwarranted. This is particularly so since the trial court had already found that there was no evidence that Barbara Gerow failed to use the vehicle as reasonably anticipated by the manufacturer or that she used it for a purpose not intended by the manufacturer. Indeed, the trial court had ruled that, for purposes of the enhanced injury theory, veering off the roadway and being involved in an accident was a reasonably anticipated use. An improper argument, objection to which is overruled, has the effect on the jury of the court's approval. *State v. Gonzalez,* 899 S.W.2d 936, 937 (Mo.App. W.D.1995). To this jury, the effect of overruling the Gerows' objection to Chrysler's argument was to approve its consideration. The argument was designed to create confusion on the jury's part. Such confusion was unwarranted and clearly injurious to the Gerows' case. Chrysler's argument was, therefore, both improper and prejudicial, and the trial court erred in overruling the Gerows' objection. The error compels reversal and remand for a new trial.

While our resolution of Point I is dispositive of the appeal, two of the Gerows' three other points on appeal present issues which may arise on retrial. Accordingly, judicial economy dictates that we address those matters at this juncture. In their second point, the Gerows allege the trial court erred in admitting evidence of post-accident changes to the guardrails at the accident location. Chrysler presented testimony of Elizabeth Wright, Operational Support Engineer with the Missouri Department of Transportation. Wright testified that the guardrail involved in this accident, referred to as a "Texas Twister," [3] was installed in

---

3. John Stilson, plaintiff's expert and an automo-

tive engineer, defined the "Texas Twister" guard-

1969, and sometime after this accident both the guardrail and the median were removed and replaced with a three-foot-high concrete barrier called a "New Jersey barrier." The Gerows objected to the following line of questioning:

> MR. CUNNINGHAM: With regard to this design of guardrail that was put in in 1969, can you even use that type of guardrail any more on U.S. Highways?
>
> MR. REDFEARN: Your Honor, I object to this as really not being relevant to any of the issues involved in this case and it's completely immaterial to any of the issues involved in this case.
>
> THE COURT: Overruled.

\* \* \*

> MR. CUNNINGHAM: Ms. Wright, do you remember my question?
>
> MS. WRIGHT: I believe so. We would not install them today.

The Gerows assert that Wright's testimony injected a false issue into the case since it pertained to the duty of the Missouri Department of Transportation (a non-party), not that of Chrysler. Chrysler argues it presented Wright's testimony to show the lack of foreseeability of this type of accident for the manufacturer, and that her response was not that the department "could not" use this type of guardrail today, but rather that they "would not."

To be admissible, "[e]vidence must have logical relevancy and probative value." *Kalish v. Smith*, 824 S.W.2d 35, 38 (Mo.App. 1991) (*quoting Moreland v. State Farm Fire & Casualty Co.*, 662 S.W.2d 556, 565 (Mo. App. S.D.1983)). The issue in this case was whether the Plymouth Reliant K car was defective in design and manufacture. Whether the Missouri Department of Transportation would or would not install such guardrails today is not probative of whether Chrysler's vehicle was defective in its design and manufacture. *See*, e.g., *Watkins v. Toro*

*Co.*, 901 S.W.2d 917, 920 (Mo.App. E.D.1995). Although Chrysler argues its questions to Wright went to the foreseeability of its vehicle encountering this type of guardrail, the record reflects that the guardrail is common in Missouri and other states.[4] Evidence of current standards has no bearing on whether the guardrails still exist on the roads and did exist in September, 1994.

> [T]he sole fact that evidence is logically relevant does not require its admission; the evidence must also have some probative force over and above logical relevancy ... If evidence pertaining to collateral matters brings into a case new controversial matters which would result in confusion of issues ... it should be excluded.

*Yingling v. Hartwig*, 925 S.W.2d 952, 956 (Mo.App. W.D.1996) (*quoting Edgell v. Leighty*, 825 S.W.2d 325, 327 (Mo.App. S.D. 1992)). Wright's testimony on this particular issue was improper and should be excluded when the case is tried again.

 In their third point, the Gerows assert the trial court erred in excluding the testimony of Chief Richard Dyer of the Lee's Summit Fire Department and Officer William Oothout of the Lee's Summit Police Department pertaining to a fatal accident which occurred within 100 yards of the location of the Gerow accident less than two years before, and which involved a fuel tank ruptured by the guardrail, resulting in a fuel-fed fire. Chrysler argued throughout its case that the type of accident was extremely unusual and could not be reasonably anticipated. The Gerows offered this testimony as evidence of the foreseeability of this type of accident by Chrysler and proof of reasonably anticipated use of the product. Following an offer of proof by the Gerows, the trial court ruled against admission of the testimony.

 Evidence of a similar occurrence is generally admissible when the accident sought to be admitted (1) is of like character; (2) occurred under substantially the same circumstances; and (3) resulted from the

rail as a steel W-beam and supporting post.

**4.** The Gerows' expert, John Stilson, testified that the "Texas twister" guardrail is found extensively in Missouri, as well as in several other states.

This was not refuted by Chrysler's experts. Wright testified that this type of guardrail was installed through the early '90's and is common in Missouri and other states.

same cause. *Hess v. Chicago, Rock Island & Pac. R.R.*, 479 S.W.2d 425, 431 (Mo.1972). When determining the relevance of evidence of similar occurrences, the court must consider the purpose for which the evidence is sought to be used, whether it is sufficiently similar for that purpose, and whether it is unduly prejudicial or confusing when used for that purpose. *Pierce v. Platte–Clay Elec. Coop., Inc.*, 769 S.W.2d 769, 774–75 (Mo. banc 1989); *State ex rel. Malan v. Huesemann*, 942 S.W.2d 424, 430 (Mo.App. W.D.1997). When a material part of one party's defense is to show the infrequency of an occurrence, or that an occurrence is very rare, an opponent may present relevant evidence to refute the inferences raised by that defense. *Pierce*, 769 S.W.2d at 775; *Deveney v. Smith*, 812 S.W.2d 810, 813 (Mo.App. W.D.1991).

The testimony of Chief Dyer and Officer Oothout was offered for the purpose of refuting Chrysler's contention that it is not foreseeable that a vehicle would ramp up on or straddle a guardrail, and to prove that guardrails and gas tanks are a dangerous combination. The fact that another accident, involving almost identical circumstances to the Gerows' accident, occurred within 100 yards of the site of the Gerow accident less than two years before, is powerful evidence tending to show that this type of accident was not a freak occurrence. The evidence clearly demonstrates that other accidents have occurred in the same manner, and tends to prove that the accident was foreseeable and could be reasonably anticipated. It is relevant for the purpose of refuting a material part of Chrysler's defense. The fact that the incident did not involve a Chrysler vehicle does not diminish its relevance. "When evidence of prior accidents is presented to show notice of danger, the similarity of the circumstances does not have to be completely symmetrical." *Lohmann v. Norfolk & Western Ry.*, 948 S.W.2d 659, 668 (Mo.App. W.D. 1997). The circumstances of the prior accident were sufficiently similar to the Gerow accident to have probative value on the issue of foreseeability, and therefore the evidence is admissible.

In their fourth and final point, the Gerows assert the trial court erred when it admitted the testimony of Chrysler expert Mark Noble because he had reviewed transcripts of the Gerows' experts' trial testimony before he took the stand, in violation of the court's order to exclude witnesses.

> The aim of imposing "the rule on witnesses," as the practice of sequestering witnesses is sometimes called, is twofold. It exercises a restraint on witnesses "tailoring" their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid. Sequestering a witness over a recess called before testimony is completed serves a third purpose as well——preventing improper attempts to influence the testimony in light of the testimony already given.

*Geders v. United States*, 425 U.S. 80, 88, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (Citations omitted). Obviously, reading transcripts of the in-court testimony of witnesses is equivalent to being present in the courtroom and listening to that testimony. Thus, when the court grants a party's request to impose the "Rule," and thereby exclude witnesses from the courtroom prior to their giving testimony, such ruling of necessity precludes witnesses from reading transcripts of trial testimony. Nonetheless, any error in the admission of Mr. Noble's testimony is moot by virtue of the cause being remanded for a new trial and therefore, we need not further address the point.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.